J. A. WHITTENBURG, JR., ET AL V. B. G. MILLER.

No. 7822. Decided July 22, 1942.
Rehearing overruled October 7, 1942.
(164 S. W., 2d Series, 497.)

*Joe McGowan,* of Brownfield, and *Sanders & Scott,* of Amarillo, for plaintiffs in error.

The court erred in overruling plaintiff's proposition interposing the statute of frauds and the statutes of conveyances as a defense to the action on the ground that Whittenburg at the time of the alleged trust agreement, held in his own name the title to said tracts of land. Moye v. Goolsbee, 124 S. W. (2d) 925; Barker v. Temple Lumber Co., 120 Texas 244, 37 S. W. (2d) 721; Johnson v. Smith, 280 S. W. 158; Howard v. Davis, 6 Texas 173.

*R. P. Moreland,* of Plains, *W. A. Nelson* and *H. S. Lattimore,* both of Fort Worth, and *Dan Moody* and *J. B. Robertson,* both of Austin, for defendants in error.

The Court of Civil Appeals correctly held that the judgment in the foreclosure suit could not be regarded as res judicata of the claim of Miller of a trust estate in one-half of the royalty, because the foreclosure suit was entirely consistent with and was impliedly contemplated by the verbal trust agreement, and the evidence and the findings by the jury showed that it was the means adopted by Miller and Whittenburg for the performance of Miller's undertaking to let Whittenburg have the land. Adcock v. Shell, 273 S. W. 900; Griffith v. Baker, 130 Texas 17, 107 S. W. (2d) 371; Riley v. Chandler, 220 S. W. 361.

MR. JUDGE SLATTON, of the Commission of Appeals delivered the opinion for the Court.

B. G. Miller brought this suit in the district court of Yoakum County, Texas, against J. A. Whittenburg, Jr., and Roy Whittenburg, individually and as executors of the estate of J. A. Whittenburg, deceased, and others interested in said estate, to recover title and possession of three sections of land situated in Yoakum County and described as follows: Survey No. 831, Block D, Certificate 132, original grantee John H. Gibson; Survey No. 863, Block D, Certificate 148 original grantee John H. Gibson, and Survey No. 830, Block D, Certificate 131, original grantee John H. Gibson. One theory of recovery of the land was that J. A. Whittenburg had purchased the land at a void foreclosure sale, in which suit J. A. Whittenburg had foreclosed against B. G. Miller in the district court of Potter County, Texas.

The second theory of recovery was that Miller asserted title to one-half of the oil and gas royalty in said land in virtue of an alleged parol agreement by and between J. A. Whittenburg and B. G. Miller, said to have been made during the month of November, 1931.

It was averred that in 1929 Miller procured J. A. Whittenburg to purchase a series of vendor's lien notes which Miller had theretofore given Edward Randal et al as a part of the purchase price for the three sections of land. J. A. Whittenburg purchased the vendor's lien notes and then took Miller's note for $5,500.00, the amount due upon the notes purchased, and further secured the payment of said vendor's lien note by the execution and delivery of a deed of trust on the lands. Miller, in November, 1931, was in default on said note and was negotiating a trade of the lands to Panhandle Lumber Company. J. A. Whittenburg agreed with Miller that if Miller would not make the land trade with said lumber company and let Whittenburg have the land, Whittenburg would thereafter hold in trust for Miller one-half of the oil and gas royalty.

It was alleged that J. A. Whittenburg in 1932 foreclosed his lien without resistance from Miller and purchased the land at foreclosure sale without any competitive bidding. It was averred by trial amendment that Miller tendered a deed to the land through a bank in Amarillo, Texas, to Whittenburg, but the same was rejected; after the death of J. A. Whittenburg the land, in 1937 was leased for oil and gas, and that oil was discovered and produced in paying quantities.

The Whittenburgs et al answered by general demurrer, special exceptions, general denials, the statute of frauds and conveyances, two and four year statutes of limitation, three and five year statutes of limitation, by adverse possession, stale demand, want of consideration, failure of consideration, res adjudicata, and that as to Section 830 under the Relinquishment Act the alleged trust could not operate.

The jury found in answer to special issues as follows:

(1) That J. A. Whittenburg, in November, 1931, agreed with B. G. Miller that if Miller would let Whittenburg have the three sections of land Whittenburg would allow Miller one-half of the oil and gas royalty from said land.

(2) That such agreement was supported by a valuable consideration.

(3) That B. G. Miller performed this agreement.

(4) That the sheriff sold the land at the judicial sale prior to 10 A. M. solar time April 5, 1932.

(5) That defendants and those under whom they claim held peaceable and adverse possession of the lands in suit for three years prior to November 23, 1938.

(6) That defendants held adverse possession of the land for five years prior to November 23, 1938.

(7) That the cash market value of the land on April 5, 1932, was $6.00 per acre.

(8) That the estate of J. A. Whittenburg had received the sum of $2,650.00 in payment of oil and gas royalty produced from the land during the month of May, 1939.

(9) That J. A. Whittenburg, in 1931 or 1932, breached the agreement with B. G. Miller.

The trial court rendered judgment in favor of Whittenburg et al and against B. G. Miller.

B. G. Miller appealed to the Court of Civil Appeals at Amarillo. The Court of Civil Appeals sustained Miller's appeal to his claim for one-half royalty under the three sections of land, together with a money judgment for one-half the royalty produced and costs of suit.

B. G. Miller and Whittenburgs et al filed motions for rehearing. The Court of Civil Appeals amended its judgment to provide for a recovery of one-half royalty by B. G. Miller under two sections of land, towit, sections Nos. 831 and 863, and reduced the money judgment to $14,337.38, being one-half of the royalty collected from said two sections and for costs.

The amended judgment of the court was based upon a remittitur filed by B. G. Miller to the effect that the state of the law relating to his claimed interest in the oil royalty from section 830, which is a state school section, not having been patented and other conditions, he was willing to remit his claim to the royalties and all of his claim to that section. The opinions of the Court of Civil Appeals are reported in Volume 144 S. W. (2d) page 381. The Whittenburgs et al applied to this court for a writ of error.

B. G. Miller introduced two witnesses to establish the alleged parol trust agreement. His son, Ben Miller, testified to a conversation between J. A. Whittenburg and B. G. Miller which was said to have occurred at the Miller ranch in the first part of November, 1931, in the presence of J. A. Whittenburg (who died in October, 1936) and his son George A. Whittenburg (who died in September, 1934), the witness Ben Miller, his father B. G. Miller, and G. M. Hamilton, a neighbor, which conversation was substantially as follows:

"Mr. Whittenburg, I have been on a trade for these houses up here, we wanted to get to talk with him about it and extending the notes and paying some cash that he was to receive from the Panhandle Lumber Company. * * * Mr. Whittenburg said he probably wouldn't make any money out of them old houses or they wouldn't want to trade them, and they will take them away from you sooner or later, and you know I never sold any land, if you will let me take this land over half the royalty is yours. * * * Dad said, 'well, it seems like about as good a thing as he could do, he would just go ahead and let him take it.' * * * That is the best I can remember."

G. M. Hamilton testified with regard to the conversation as follows:

"I remember in the conversation they said something about some houses that Mr. Miller was going to trade for or might trade for. * * * It seems to me like he (Whittenburg) said

that to let them houses go, they were worthless, or something or other to that effect. * * * Mr. Whittenburg told Mr. Miller that he would let him have the land and handle that land— handle that land as it was he would give him half royalty. * * * Mr. Miller told him he would do that. * * * I don't remember whether they said anything about any notes or not. It was none of my business."

Before and at the time of this alleged conversation B. G. Miller was in default in the payment of the interest due upon the vendor's lien note. He was delinquent with the interest payments due the State upon one of the sections of land and had not paid all of the taxes then due upon the land. Whittenburg's attorneys advised Miller by letter dated November 13, 1931, that the note had been declared due on account of his failure to pay the interest and advised Miller that unless the indebtedness was paid or a deed to the land tendered by November 20, 1931, foreclosure proceedings would be instituted. Miller made a contract with Panhandle Lumber Company wherein he agreed to exchange the land in suit for residential property situated in Lubbock, Texas, which was dated on the 12th day of November, 1931. The lumber company borrowed the abstracts to the land from the attorneys representing Whittenburg and the same were returned on the 30th day of November, 1931. During the pendency of the contract between Miller and the lumber company Miller, during the latter part of November, 1931, made a trip to Amarillo for the purpose of obtaining a renewal of the Whittenburg note, but was unsuccessful. The trade between Miller and the lumber company was not approved by the lumber company because the Whittenburg note could not be rearranged or renewed. On November 30, 1931, the attorneys for Whittenburg wrote B. G. Miller that it was apparent that his propositions to get his indebtedness settled or extended were not satisfactory to Mr. Whittenburg and that they, as his attorneys, had been directed by Mr. Whittenburg to file foreclosure proceedings unless settlement was made on or before December 1, 1931.

Whittenburg filed the foreclosure suit in the district court of Potter County on the 17th day of December, 1931. Citation was issued on the same day in Yoakum County and the same was served upon B. G. Miller December 21, 1931. Judgment was rendered on the 3rd day of February, 1932. Execution and order of sale was issued on March 1, 1932. The sale was duly advertised and the land sold on April 5, 1932.

March 2, 1932, B. G. Miller wrote J. A. Whittenburg's attorneys and enclosed a letter from a real estate man at Anson, Texas, making an offer for the Miller lands and prevailed upon Whittenburg's attorneys to advise J. A. Whittenburg to extend the indebtedness on the land so that the trade could be closed. Whittenburg's attorneys replied on the 5th day of March, 1932, and advised B. G. Miller as follows:

"As requested by you, we are returning to you herewith the letter from C. C. McCargo.

"I took this matter up with Mr. Whittenburg, read the letter to him, but he does not think there is much probability of your being able to close any such deal and thinks that he should not interrupt the foreclosure proceedings already in process.

"This land will probably be sold under order of sale on April 5, and we certainly hope you will make arrangements to pay off the indebtedness before the day of sale so that it will not be necessary to sell the land. Any time you have a purchaser who will pay Mr. Whittenburg's indebtedness we will cooperate with you in closing the deal."

B. G. Miller wrote the Amarillo National Bank on March 6, 1932, and enclosed a deed to the land from B. G. Miller to J. A. Whittenburg, advising the bank to notify Whittenburg's attorneys of the receipt of the deed and to deliver the same when the bank was furnished with releases and cancellation of the indebtedness. No reservation of any royalty was contained in said deed. The attorneys for Whittenburg, on March 18, advised B. G. Miller by letter as follows:

"After taking the matter under consideration * * * all the expenses have already been incurred in the foreclosure and notice of the sale published and expenses incurred for that, we think it would be best to go ahead and sell the land as advertised. Mr. Whittenburg tells us that it is not his intention to preserve a deficiency judgment against you if the land does not bring enough to pay the debt. If you will meet us on the day of the sale and the land is not sold to someone else for enough to take care of Mr. Whittenburg's indebtedness and Mr. Whittenburg buys the land in we will take up with you the matter of releasing any deficiency judgment.

"We still hope that you may be able to sell this land before sales day because Mr. Whittenburg really does not want the

land and would much prefer to have the debt paid. Hope you will meet us on April 5 at Plains."

It is in the evidence that B. G. Miller attended the sale and stated that he was going to "bid on it" and "try to arrange to get it back." It is also in evidence that after the land had been sold to J. A. Whittenburg at the foreclosure sale B. G. Miller had the following conversation with witness McGinty of Plains, Yoakum County, Texas, with reference to the land. We quote in question and answer form:

"Q. About how long after the sale?
"A. It was just not very long, pretty shortly after the sale; I would think a month.

"Q. What did you say to Miller?
"A. I told him I heard that these people had taken his land away from him.

"Q. What did he say?
"A. He said 'Yes.'

"Q. And then what did you say?
"A. I asked him if he had anything left, got anything over and above the indebtedness.

"Q. What did he say?
"A. He said, 'Did you ever know them giving a man anything more than what they had to?' I said, 'Well, I have known men to get a little more on a compromise, get a little more out of the indebtedness, and I referred to the Weber case.

"Q. And then what did he say?
"A. He said 'I didn't get a * * * thing."

This suit was filed December 4, 1937, after the death of J. A. Whittenburg and George Whittenburg, and after the land had been leased for oil and gas; and oil produced thereon in paying quantities. The cause was tried at the June term in 1939.

Whittenburgs et al contend that the parol contract between B. G. Miller and J. A. Whittenburg was in violation of the statute of frauds and that the Court of Civil Appeals erred in rendering judgment for Muller for an undivided one-half interest in and to the royalty under Sections 831 and 863 and the money judgment for oil which had been produced.

■ J. A. Whittenburg was the owner of a vendor lien promissory note which was due and unpaid at the time of the alleged contract and as such owner held the superior title to the land. Masterson v. Cohen, 46 Texas 520, 523, 524; Hamblen v. Folts & Walsh, 70 Texas 132, 135, 7 S. W. 834. No title to the land could be acquired by B. G. Miller save such as was conditioned on payment of the notes. Roosevelt v. Davis, 49 Texas 463, 472. The contract of sale could have been rescinded by parol agreement between Whittenburg and B. G. Miller, or by J. A. Whittenburg alone, on Miller's default to pay the notes or repudiation of his obligation to pay same. Thompson v. Robinson, 93 Texas 165, 54 S. W. 243, 77 Am. St. Rep. 843; Johnson v. Smith, 115 Texas 193, 280 S. W. 158. J. A. Whittenburg did not rescind the contract of sale. Neither can it be said that the oral agreement alleged to have been made between J. A. Whittenburg and B. G. Miller has the effect of rescinding the contract of sale. According to the oral agreement J. A. Whittenburg was to receive the land and B. G. Miller was to receive one-half of the royalty. J. A. Whittenburg, being invested with a superior title to the land at the time of making the alleged oral agreement, could not by parol convey such title to B. G. Miller. Allen v. Allen, 101 Texas 362, 107 S. W. 528, and Foster v. Ross, 77 S. W. 990, loc. cit. 991 (writ denied). It is true that a purchaser of land under a deed reserving a vendor's lien has the right to bring a trespass to try title suit. Stephens v. Motl, 82 Texas 81, 18 S. W. 99. And the vendee under such a contract of purchase from the date he takes possession has the benefit of any increment, advantage or enhancement, and suffers any detriment, depreciation or loss thereto without fault of either party to the contract. Leeson v. City of Houston, 243 S. W. 485, loc. cit. 488. And the vendee's right in such property has been said to be "an equitable title or interest in the property. * * * "As between the vendor and the purchaser, the legal or superior title of the former does not ordinarily pass to the latter, so as to vest an absolute title or present interest in him, until a conveyance has actually been delivered, or—under a sale by a deed reserving a lien—until the purchase money has been paid." 43 T. J. Sec. 146, pp. 241-2-3; Stitzle v. Evans, 74 Texas 596, 12 S. W. 326. It is the law of this State "that trusts in lands, as well as those which are created by express contract as well as those which are implied and result by construction of law, are not within the statute of frauds, and consequently need not be evidenced in writing. However, where a contract must be proven as a basis for the alleged trust, and

such contract rest on parol evidence, the claim to subject land to the trust will fail. * * *" 42 T. J. sec. 67, p. 677. In order that a trust may arise from a contract, the contract must be an enforceable one. The superior title being in J. A. Whittenburg at the time of the alleged oral agreement, his oral contract to convey title to one-half of the royalty to B. G. Miller is unenforceable because in violation of the statute of frauds and the statute of conveyances, Vernon's Annotated Civil Statutes, Article 1288, R. C. S. 1925. Such an oral agreement must fail as creating a trust, because such agreement was made subsequent to the acquisition of the superior title by the said J. A. Whittenburg. Authorities cited supra.

■ Neither can it be successfully contended under the facts in this case that the parties in making the parol agreement contemplated that the foreclosure suit would be instituted, a judicial sale conducted and the title to the land placed in the name of J. A. Whittenburg and one-half of the royalty to be held in trust for B. G. Miller. The acts of B. G. Miller after the oral agreement, in his repeated efforts to sell or trade the land and to refinance the lien against it refute such contention. The acts of Whittenburg as disclosed by the record, through the correspondence of Whittenburg's attorney to B. G. Miller, also refute such contention. All of the acts of Miller and Whittenburg, as shown by the evidence, which occurred after the alleged oral agreement, are inconsistent with the theory that said parties considered a binding enforceable agreement existed between them whereby Whittenburg would obtain complete title to the land at the foreclosure sale and hold one-half the royalty in trust for the beneficial interest of B. G. Miller. The undisputed evidence shows that the contract of exchange between Miller and the lumber company was not finally approved by the lumber company because the indebtedness against the Miller land could not be rearranged nor renewed. There was nothing in the parol agreement that would compel J. A. Whittenburg to renew the loan. There is no evidence in this record tending to show that Miller had any defense to the foreclosure suit, hence lost no right in not resisting it. According to the evidence he was unable to obtain a loan with which to pay off and discharge the vendor's lien note. Under these circumstances he is not in position to invoke the doctrine of part performance and thereby avoid the force of the statute of frauds. We recognize the general rule as stated in the case of Morris v. Gaines, 82 Texas 255, 17 S. W. 538, loc. cit. 539, to be that:

"The doctrine is well established that where either party, in reliance upon the verbal promise of the other, has been induced to do or to forbear to do any act, and thereby his position has been so changed for the worse that he would be defrauded by failure to carry out the contract, equity will enforce performance."

Obviously such a rule has no application to the facts of this case. In the case of Lodge v. Leverton, 42 Texas 18, loc. cit. 30, it is said:

"Acts done in performance, it has been justly observed, must be such as could have been done with no other view or design than to fulfill the particular contract sought to be enforced."

We have noted the acts of B. G. Miller between the time of the making of the parol agreement to the time of the judicial sale and, as we have seen, such acts are inconsistent with the parol agreement which he seeks to enforce and were not done "with no other view or design than to fulfill the particular contract sought to be enforced."

It is contended by Miller that the finding of the jury that the sheriff's sale under which the Whittenburgs claim was conducted prior to 10 A. M. *solar* time, therefore the deed is void and Miller is entitled to recover irrespective of our ruling with regard to the validity of the trust agreement; and the sheriff's deed executed in virtue of the judicial sale is said to be void for the reason that the notices of the sale did not state that the land would be sold in Yoakum County, Texas.

■ The Honorable Court of Civil Appeals by reversing the judgment of the trial court and rendering judgment in favor of Miller for one-half royalty under the land involved in this suit by implication ruled against the claim of Miller to the fee in the three sections of land. B. G. Miller did not prosecute a writ of error to this court and complain of such rulings. However, we have jurisdiction to pass upon these contentions because it is our right to look to any assignment of error filed and properly urged in the Court of Civil Appeals by Miller for the purpose of ascertaining if the judgment of the Court of Civil Appeals may be sustained upon any other theory. Garcia v. Moncada, 127 Texas 453, 94 S. W. (2d) 123; Montgomery v. Houston Electric Co., 135 Texas 538, 144 S. W. (2d) 251. There is no merit to the contention that the sale was void

because the same was conducted prior to 10 A. M. solar time. McFarlane v. Whitney, 134 S. W. (2d) 1047.

The notice of sale, after reciting "by virtue of an order of sale issued out of the district court of Potter County, Texas" then described the judgment, the making of the levy, and recited as follows:

"Upon the following described tracts and parcels of land situated and located in Yoakum County, Texas, as the property of B. G. Miller (here describes the land) * * * And on the 5th day of April 1932, being the first Tuesday of said month, between the hours of 10 A. M. and 4 P. M. on said day at the courthouse door of said county, I will offer for sale and sell at public auction for cash * * * etc.

"Dated at Plains, Yoakum County, Texas, this the 4th day of March, 1932.

> (Signed)  Walter Moreman,
> Sheriff of Yoakum County, Texas
> By- J. L. Weber, Deputy."

It is claimed that the notice refers equally to Potter County and to Yoakum County and gave the public no information as to where the sale would be held. We think the notice sufficient to give the public full information as to the place of sale. It is clear that "at the courthouse door of said county" means Yoakum County, in said notice next above mentioned, and stated over the attest of the sheriff where the land is situated. The public are presumed to know the law that judicial sales cannot be conducted in any county other than where the land is situated and that the sheriff or his deputies of Yoakum County could not legally conduct a judicial sale outside of Yoakum County. Therefore, no one reading the notice of sale could come to any other conclusion than that the sale was to be held at the courthouse door in Yoakum County, Texas.

Many contentions made by the parties to this appeal will not be noticed because, as we view the case, they become immaterial since we have held that the alleged parol agreement is unenforceable, being in violation of the statute of frauds and conveyances.

B. G. Miller contends that under the undisputed facts and the findings of the jury the Court of Civil Appeals properly rendered judgment in favor of Miller because it is claimed that the Whittenburgs did not file in the trial court a written motion for judgment notwithstanding the verdict; and by counter point two it is contended that the trial court was without power to render judgment except in favor of Miller or to grant a new trial for the same reason. The judgment of the trial court contains the following:

"The court concludes as a matter of law that the findings of the jury to special issues Nos. 5 and 6 submitted by the court in his main charge to the jury and special issue No. 9 requested by the defendants, together with other uncontroverted issues raised by the pleadings and not submitted to the jury, and the application of the law as applied to special issues Nos. 1 and 4 submitted by the court in his main charge, notwithstanding answers of the jury to such issues, entitled the defendants to judgment as prayed for. * * *"

The Whittenburgs filed a motion which states in part:

"The language of the witness G. M. Hamilton and Ben Miller now established in the record as a matter of law is not sufficient to support the alleged express trust and in legal contemplation is nothing more than a parol promise which could not have been enforced because of the statute of frauds and statute of conveyances. * * * Wherefore the defendants move the court to enter judgment on the issues found favorable to them by the jury, disregarding issues found against them by the jury, which are immaterial and are notwithstanding the findings of the jury."

The judgment further recites:

"Be it remembered that on this first day of July, 1939 came on for hearing defendants' motion for judgment in the above cause. All parties appeared in open court and participated in the hearing on said motions. The court, having heard the motions and the arguments for and against the same, is of the opinion that the same should be granted. It is therefore ordered * * * by the court that defendants' motions for judgment in this cause be and the same are hereby granted * *."

One of the motions of the Whittenburgs contained in the transcript does not appear to have the file mark of the district

clerk noted thereon. That motion contains the paragraph and prayer above quoted. The other motion for judgment filed by the Whittenburgs reads in part as follows:

"Come now the defendants (after reciting the receipt and filing of the jury verdict) and move the court to render judgment for the defendants on the answers of the jury to Special Issues Nos. 5 and 6 submitted by the court in his main charge and defendants' specially requested issue No. 9 and on the uncontroverted issues not submitted by the court to the jury."

The judgment quoted may be construed as sustaining both motions for judgment filed by the Whittenburgs. No complaint has been made with regard to the second quoted motion. The complaint of Miller is that the first motion quoted was never filed by the clerk and that counsel for Miller had no notice of its contents until after both motions for judgment of the Whittenburgs had been granted by the trial court, towit, on the 30th day of June, and until three days later when the trial court was about to pass upon Miller's motion for a new trial. At that time counsel for Miller moved the trial court to amend its judgment, which granted both motions of the Whittenburgs, to apply only to the last motion above mentioned for the same reason now urged against the first quoted motion of the Whittenburgs. The trial court overruled such request. Thus a contested issue is presented as to whether counsel for Miller had notice of the presentment of said motion and participated in its presentation to the trial court. It is not necessary for us to decide the questions stated for the reason that the Whittenburgs filed in the trial court a motion for a directed verdict and upon the same being overruled duly excepted. The trial court submitted special issues to the jury over the objection of the Whittenburgs. The issues which were answered in favor of Miller do not entitle him to a judgment. Therefore, such issues become immaterial to a proper judgment to be rendered in the cause. In the case of Bewley Mills v. First Natl. Bank, 110 S. W. (2d) 201, loc. cit. 206 (writ refused) it is said:

"Any finding made by a jury on an issue which is not controlling may be disregarded by the trial court and furnishes no basis for the contention that a motion should be made for judgment notwithstanding the verdict."

In the case of Vogel et al v. Allen, 118 Texas 196, 13 S. W. (2d) 340, Judge Leddy recognized the general rule that:

"* * * the court is not authorized to render a judgment notwithstanding the findings of the jury." (This decision was handed down before the amendment to Article 2211 in 1931).

"There is, however, a well recognized exception to this rule to the effect that where under no view of the pleadings and evidence the plaintiff is entitled to recover, the submission of the issues and the findings of the jury are immaterial and may be disregarded by the court." (Citing a number of authorities.)

The judgment of the Court of Civil Appeals is reversed and the judgment of the trial court is affirmed.

Opinion adopted by the Supreme Court July 22, 1942.

Rehearing overruled October 7, 1942.