**JOHNSON et al. v. BLACK.**

No. 2536.

Court of Civil Appeals of Texas. Eastland.

Oct. 11, 1946.

Rehearing Denied Nov. 22, 1946.

C. O. McMillan, of Stephenville, for appellants.

E. M. Davis and E. J. Miller, both of Brownwood, for appellee.

GRAY, Justice.

We adopt the following statement of the nature and result of the case as set out in appellee's brief, which we deem to be a fair statement of same:

"The statement of the nature of the case as given in Appellants Brief needs to be supplemented to give the court a fair conception of the issues presented. This suit was brought to cancel a deed made by the plaintiff, George B. Black and wife Zora Black, father and mother of the defendant, Appellant, Louise (Moore) Johnson, on the alleged ground of fraudulent representations and promises made by the defendant inducing the execution and delivery of the deed. Estoppel also was plead and alternative relief prayed as shown by Plaintiffs Second Amended Petition upon which trial was had.

"Plaintiff and his wife for some 15 years or more prior to January, 1939, had owned and lived upon 707 acres of land in Comanche County, during the last 8 or 10 years of which time the defendant Louise Johnson (then Louise Moore) had lived with them, she being a widow. As part of the purchase money plaintiff owed Federal Land Bank of Houston several thousand dollars; for improvements he owed Higginbotham Bros. several hundred dollars, both of which debts were secured by liens upon said land.

"He also owed Cattle Raisers Association a secured debt of some hundreds of dollars. During the hard depression years, 1930-1939, plaintiff was not able to pay interest and maturities and defendant, Louise (Moore) Johnson, having some available funds, paid off various items of such indebtedness, interest, etc., taking assignments of the items with the liens securing same. In January 1939 she demanded of, and induced, her father and her mother to convey to her an undivided one-half interest in and to said 707 acres of land, reciting as a consideration $4620.00, 'in the equivalent of cash,' and the release of the debts and liens so held by her. Plaintiff alleges that the recited $4620.00 was the total indebtedness owed by him and his wife to defendant for the assigned debts, liens and otherwise, and that said conveyance was induced by the fraudulent representations and promise made by the grantee that she would re-convey same to them at any time during her mother's life time, if and when they were able to pay her said sum of $4620.00 without interest.

"Plaintiff, George B. Black, further alleges that with the joinder of the defendant, he and his wife, Zora M. Black, conveyed 406 acres of said land to one Carruth in October, 1942, and deposited the net proceeds of such sale in the bank at Comanche to the joint credit of defendant and her mother, Zora M. Black; that upon the further false and fraudulent representation and promise of the defendant that she would accept said sum as full payment of all obligations due her by her father and mother and would at once execute and deliver to them a reconveyance of the remaining 301 acres of said land, in compliance with her original representation and promise, thereby induced them to release unto the defendant the full net receipts of said 406 acre sale, but when she had secured possession of said sum of money she promptly converted same and refused and still fails and refuses to reconvey her interest in said 301 acres, and thereupon she is estopped to now hold title thereto and or deny the plaintiffs equitable title.

"The defendant denied that she ever promised or intended to reconvey said premises, alleging that the conveyance

dated January, 1939 was an absolute and unconditional conveyance. Also denying that she ever promised to execute and deliver reconveyance as an inducement to get possession of and convert to her sole use and benefit the net proceeds of the sale of the 406 acres. After the evidence was in the Court submitted to the jury several issues which were answered by the jury and thereupon both plaintiff and defendant made motion for judgment, and after striking the answers to special issues 3 and 4, the court entered judgment non obstante veredicto in favor of the plaintiff, from which judgment this appeal is taken."

The property involved in this suit was formerly the separate estate of the said Mrs. Zora M. Black, who, joined by her husband, George B. Black, instituted the original suit. But subsequently Mrs. Black died, leaving her husband as her sole legatee, who thereby became the owner of the property and the sole plaintiff in the case.

The special issues on which said case was submitted, together with the answers thereto by the jury, were as follows:

"1. Do you find from a preponderance of the evidence that prior to and immediately preceding the execution of the deed by George B. Black and wife, Zora M. Black, to Louise Black Moore, dated January 20, 1939, that the said Louise Black Moore (now Louise Johnson) represented to George B. Black and Zora M. Black that if they would execute their deed to her to the land in question, she would reconvey said land to Zora M. Black if plaintiffs were ever able to and offered to repay to her the sum of money she had advanced to them, as set out in plaintiff's last amended petition? Answer: Yes, she did.

"2. Do you find from a preponderance of the evidence that the plaintiff, George B. Black, and the said Zora M. Black believed said representation, if any, to reconvey said land, to be true, and did they rely upon the same? Answer: Yes, they did rely upon the same.

"3. Do you find from a preponderance of the evidence that but for the representation by Louise Black Johnson to re-convey said land to her mother, if you find

such representations true made, that the plaintiff, George Black, and Zora M. Black would not have executed and delivered to Louise Black Johnson the deed in question in this suit? Answer: Yes, they would have executed said deed.

"4. Do you find from a preponderance of the evidence that at the time the said Louise Black Johnson made the promise to re-convey said land in the event her mother and father were able to repay her the $4520.00 mentioned in said deed if you find that she did so promise, that she had no intention of ever complying with such promise, should an offer of repayment be made? Answer: Yes, she did intend to comply with such promise.

"5. Do you find from a preponderance of the evidence that on or about February 8th, 1942, that the defendants Louise Johnson and husband, James E. Johnson, represented to the plaintiff George B. Black and Zora M. Black, that if they would permit the defendant Louise Johnson to withdraw the entire balance of the joint deposit in the State National Bank of Commerce in the name of Louise Johnson and Zora M. Black, then amounting to $3,886.-93, that defendants would execute a certain deed theretofore prepared by George E. Smith and mailed to defendant Louise Johnson at her home in Blanco County? Answer: Yes, she did make such promise.

"6. Do you find from a preponderance of the evidence that the plaintiff, George B. Black and wife relied upon such promise, if any you have found, and believed the same to be true? Answer: Yes.

"7. Do you find from a preponderance of the evidence that but for such promise to sign and return said deed, if you found there was such promise, that the plaintiff, George B. Black and Zora M. Black would not have consented to the withdrawal of all of said funds in said bank? Answer: No, they would not have consented."

The record in this case is very voluminous. The motion for new trial contained one hundred fourteen assignments, which were condensed into fourteen points. To undertake a detailed discussion of the evidence and all the questions raised would extend this opinion to an undue length. Ap-

pellant suggests that the case may turn on his first point, which alleged as error the action of the trial court in overruling her motion for an instructed verdict and later rendering judgment non obstante veredicto for plaintiff. While we have given careful consideration to the entire record, we shall only discuss what we believe to be the controlling issues in the case. ·

In the first count of plaintiff's amended petition upon which the case was tried and judgment rendered, plaintiff sought cancellation of the deed in question for alleged false and fraudulent representations by appellant inducing its execution in the first instance, and by reason of the withdrawal by appellant of the net proceeds of a joint bank deposit resulting from the sale of 406 acres of the land upon the alleged promise of appellant to execute and deliver a deed reconveying to Zora M. Black her undivided one-half interest in the remaining 301 acres. In connection with the said plea of fraud, plaintiff further alleged that by reason of the premises, a trust in favor of plaintiff should be established in said 301 acres of land, and that defendant was estopped from claiming or asserting any right, title or interest in said 301 acres. Defendant answered by numerous special exceptions, general denial, specially denied that a trust was created or resulted, and further pleaded facts, which if proven, would establish a complete defense, as well as the statute of frauds.

■ The first inquiry which we shall make is whether plaintiff made out a satisfactory case of fraud against the defendant, appellant here. The entire negotiations and alleged promises and representations being in parol, fraud must have not only been properly pleaded, but proven to relieve same from the ban of the statute of frauds. It should also be borne in mind that the deed under attack was a general warranty deed reciting a valuable consideration of $8,000, and except as to the life estate reserved in favor of Zora M. Black, contained no further reservations, no agreement to reconvey nor conditions of defeasance. It was absolute on its face. As to preliminary conversations immediately preceding the execution of said deed, appellee, George B. Black, testified:

"She (appellant) said: 'If ever you get able to pay me back my money, my $3,300.-00, I will deed the place back to Mamma. All I want is security for my money, but you will never do it.' She emphasized that several times, that I would never be able to pay her."

He further testified that the recited part consideration of $4620, "the equivalent of cash," in the deed, represented the amount of said $3,300 at the date of the deed. The remainder of the consideration was certain liens assumed by Mrs. Johnson, which, however, had been transferred to her, all of which were declared satisfied and discharged. The evidence further shows that said note and two others were cancelled and surrendered to the grantors. From disinterested witnesses, it was shown that land values in that locality as of January 20, 1939, the date of said deed, were low, and it would seem that considering the fact that most of said land was grazing land, and possession and use reserved until the death of Zora M. Black, the consideration for the deed to the one-half interest in the fee was adequate, if not actually in excess of the real value of the interests conveyed. The conclusion that both grantors and grantee treated and considered the matter as final is further strengthened by the fact that soon thereafter, Mr. and Mrs. Black conveyed the other undivided half of said land to their son, W. L. Black, upon consideration that he pay the balance due and to become due to the Federal Land Bank. However, he subsequently reconveyed the same to his grantors for the same consideration.

■ We call attention to the fact that in none of the issues submitted to the jury do we find the words "false," "falsely" or "fraudulently." Nor was the matter of fraud affirmatively submitted. No issue as to injury to appellee was submitted or requested. While it is true the jury found that appellant made certain promises and representations, it does not necessarily follow that they were false and fraudulent. We think the burden was on appellee to prove that they were false and fraudulent. We do not understand how the judgment of the trial court could be sustained in the absence of a finding of fraud. That was

the real issue in the case. Fraud could not be presumed.

When we inquire further as to the sufficiency of said promises and representations as the basis for suit and judgment, we find authorities which clearly hold them insufficient. No time limit within which reconveyance was to be had was named, and it might have been soon or never, depending on the contingencies that the grantors some day would come into possession of enough money to repay their daughter what they formerly owed her, and would tender her the money. This was entirely too indefinite to give legal vitality to the alleged promise. No binding contract could be predicated on it, either oral or written. Mr. and Mrs. Black were in no sense obligated to perform by tendering the money, even if they acquired it. The alleged agreement was, therefore, unilateral and no binding contract resulted by reason thereof. Said alleged agreement was wholly lacking in mutuality, an essential element of a valid contract. In the recent case of Stanfield v. Kaufman, Tex., 195 S.W.2d 848, 849, it is said:

"It is elementary that a naked agreement by one party to sell land to another in consideration of a stipulated price to be paid therefor which does not obligate the other party to pay the price is void for want of mutuality," citing National Oil & Pipeline Co. v. Teel, 95 Tex. 586, 68 S.W. 979; 43 Tex.Jur. p. 37, sec. 19.

As to the indefiniteness and lack of mutuality of said alleged agreement, the Supreme Court case of Sorrells v. Coffield, Tex., 187 S.W.2d 980, 982, is very much in point. In that case, Sorrells alleged an oral partnership agreement by which Coffield was to purchase 120 acres of land from one Butler, out of which Sorrells was to procure the sale of enough mineral interest to repay Coffield the purchase price of $1200, after which, they should own the land jointly, each an undivided one-half. Coffield bought the land taking title in his own name, and finally Sorrells procured the sale of one-half of the mineral interest for the same price. Coffield refused to convey to Sorrells, who filed suit. The court said:

"In this case Sorrells testified that he was 'entitled to my part of that if I sold that royalty'; that the land would be half his 'when he (Coffield) received his money back'; and that these things might happen 'in 10 years or ten days or twenty years or 20 days.' And, under that version, he could truthfully have added, 'or never.' The jury's finding was that he was to become invested with his equitable title 'as and when' mineral interests were sold sufficient to reimburse Coffield. Clearly, therefore, the alleged agreement was wholly wanting in mutuality in that Sorrells was in no sense legally bound to perform, since that he might perform in '10 years or ten days or twenty years or 20 days' necessarily meant also that he was not bound ever to perform unless he elected to do so. So, under authority of Clayton et al v. Ancell et al and Nettles et ux v. Doss, supra, and the cases therein cited, we hold that the agreement was unenforceable under the statute of frauds." See Clayton et al v. Ancell et al, 140 Tex. 441, 168 S.W.2d 230; Nettles et ux v. Doss, Tex.Civ.App., 161 S.W.2d 138 (error refused.)

As to whether or not an express trust in said land was created in favor of the Blacks or whether a resulting trust grew out of it, it is stated in Sorrells v. Coffield, supra, that while trusts in land may be proved in Texas by parol, James v. Fulcrod, 5 Tex. 512, 55 Am.Dec. 743, yet there are definite limitations. Allen v. Allen, 101 Tex. 362, 107 S.W. 528. The transaction must not conflict with those sections of the English Act which we adopted. "Other cases say that the transaction must be in harmony with general principles of law. In other words, a trust may arise only from an enforceable contract," citing Whittenburg et al v. Miller, 139 Tex. 586, 164 S.W.2d 497. Many other authorities to the same effect might be cited. We conclude that the alleged promise of appellant to reconvey the said land to her mother, if and when they were ever able to repay her what she had advanced to them, if tendered, was void and unenforceable for the reasons mentioned above, and that no trust in said land in favor of said grantors was created or resulted therefrom, especially in view of the fact that

the evidence on which plaintiff depended for cancellation of the deed conflicts with the contractual recitals of the deed and was inadmissible under the parol evidence rule. 17 Tex.Jur. p. 791, sections 352 and 353.

This brings us to a consideration of the second phase of the transactions by which appellant obtained possession of the deposit of the net proceeds of the sale of 406 acres of said land. A very different situation is here presented, in that appellant held the legal and equitable title to an undivided one-half interest of the unsold 301 acres. In this second phase, it is not a question of acquiring title, but of divesting title absolutely regular on its face and supported by a valuable and adequate consideration when acquired.

■■ The inquiry thus narrows to the unsold 301 acres. By the voluntary sale of 406 acres by all the parties, and the discussions by the parties themselves, no question as to any character of trust seems to have arisen so far. And as we have held, Mrs. Johnson having acquired her title by cancellation of said $3300 note then amounting to $4620 and assuming certain lien indebtedness which she held and declared satisfied, all of which seemed to have constituted a valuable and ample consideration, we do not think that any subsequent transactions between the parties could relate back and taint the title to the 301 acres. So if a trust ex maleficio or constructive trust arose it must have been at the very time of the withdrawal of said deposit. Mrs. Johnson had not been paid or tendered the amount equivalent to said note and other cancelled liens, but all agreed that she was to be paid from proceeds of the sale of said 406 acres, the gross sum being $12,180. She claimed the entire deposit of $5418.72, net proceeds, which claim, we think, is supported by the record Giving effect to the recital in the deed, that the $4620, "the equivalent of cash," was the amount then due on said $3300 note, which George B. Black testified was correct, we find that the lien indebtedness so assumed and cancelled amounted to more than $4000. At the time of executing said $3300 note, Mr. and Mrs. Black executed to Mrs. Johnson two additional notes, one for $1012.65 representing payments to Federal Land Bank made by Higginbotham on behalf of the Blacks, and the other for $2201.80, a second lien against the land, both debts and liens having been previously transferred to Mrs. Johnson. Said last mentioned notes were delivered to the Blacks with said $3300 note following delivery of the deed and were cancelled in the deed. The evidence shows that after payment of the commission, one-half of which was chargeable to the Blacks and one-half to Mrs. Johnson, and the further payment of the remainder of the Federal Land Bank loan, taxes and other items chargeable to the Blacks, only $5418.72 remained for deposit. Thus the Blacks are shown to have received $6261.28 and Mrs. Johnson only $5418.72 from said sale, or $421.28 less than half of the net proceeds thereof. Was Mrs. Johnson by reason of demanding and receiving that which the record shows to have justly been her own money, guilty of such fraud as to raise a trust ex maleficio in her own land? We think not. ·

■ In 20 Tex.Jur. p. 68, sec. 39, it is stated:

"Actionable fraud is fraud from which injury results; courts do not undertake to deal with the breach of moral obligations, Moore vs. Cross, 87 Tex. 557, 29 S.W. 1051. In other words, in order for fraudulent representations to be actionable, either in law or in equity, some injury must have resulted to the complaining party," citing many cases.

Again:

"It is elementary that where a false representation is charged to have misled a party into signing a contract, he must not only show the falsity of the representations, that he was misled by such and induced to sign the contract thereby, but must also show that he has been damaged and the extent of his damages," citing authorities.

■ Neither the pleadings nor the evidence disclose the amount of claimed damages to the Blacks by reason of the withdrawal of said deposit. On the other hand, the evidence shows that they suffered no damage, but actually received several

hundred dollars more than their half of the 406 acres brought. This would seem to eliminate plaintiff's plea of estoppel. In 17 Tex.Jur. p. 144, sec. 15, we find this statement of the applicable law:

"No estoppel is predicable of acts or statements of the defendant where it is not shown that the conduct or position of the plaintiff has in any respect been influenced thereby to his prejudice."

"One material element of an estoppel is that the party claiming it must have been misled by the representations or conduct of the opposite party to change his position for the worse."

"A party is estopped whenever he has gained an undue advantage, and has caused his adversary a loss or injury."

"The plaintiff must establish that he will be damaged, injured or prejudiced if the defendant is not held to be estopped."

As shown above, if either party suffered injury, it was the defendant, who received less than the amount for which her one-half interest was sold.

But it is urged that fraud may be predicated on the alleged promise to reconvey the half interest in the 301 acres. Mrs. Johnson denied making the promise. The jury found that she did make such promise. Even if so made, we still are confronted with the fact that it was in parol. Article 1288, R.S. and the statute of frauds, Vernon's Ann.Civ.St. art. 3995, supported by many decisions, are to the effect that a contract or agreement for conveyance of real estate, to be effective, must be in writing. Proof of fraud in acquiring a title may defeat it, but we have found no case where the holder of a validly acquired title could be divested of same merely upon a parol promise to convey. The statutes mentioned were designed to prevent fraud, but a contrary rule would open the flood gates to fraud and render all land titles insecure. Any owner might be divested of his title upon false oral testimony that he had verbally agreed to convey it. Therefore, the law wisely provides that a contract or agreement to convey land must be in writing and must contain all the elements of a valid enforceable contract. See authorities above.

In the above cited case of Sorrells v. Coffield, Tex., 187 S.W.2d 980, the plaintiff prayed that the defendant be adjudged a trustee to one-half interest in the land and minerals, and in the alternative, that he have judgment vesting in him title to such interest, but the Supreme Court not only refused to declare a trust, but also refused to vest title in Sorrells, because the alleged oral contract was lacking in mutuality and unenforceable under the statute of frauds.

In the case of Whittenburg et al. v. Miller, 139 Tex. 586, 164 S.W.2d 497, Miller sued for title and possession of three sections of land on an alleged oral agreement or contract. The trial court rendered judgment for the defendants, which was reversed and rendered by the Court of Civil Appeals, 144 S.W.2d 381, which held that a parol trust had been created in the land in favor of Miller by reason of the fact that Whittenburg, who held the superior title evidenced by a vendor's lien secured by a deed of trust, orally agreed that if Miller would give him the land he would allow Miller half of the royalty from any oil and gas produced thereon. Syllabi 4. The Supreme Court reversed the Court of Civil Appeals and rendered judgment affirming the trial court.

We quote from the Supreme Court decision [139 Tex. 586, 164 S.W.2d 502]:

"It is the law of this state 'that trusts in lands, as well as those which are created by express contract as well as those which are implied and result by construction of law, are not within the statute of frauds, and consequently need not be evidenced in writing. However, where a contract must be proven as a basis for the alleged trust, and such contract rests on parol evidence, the claim to subject land to the trust will fail. * * *' 42 T.J. sec. 67, p. 677. In order that a trust may arise from a contract, the contract must be an enforceable one. The superior title being in J. A. Whittenburg at the time of the alleged oral agreement, his oral contract to convey title to one-half of the royalty to B. G. Miller is unenforceable because in violation of the statute of frauds and the statute of conveyances, Vernon's Annotated Civil Statutes, Article 1288, R.C.S.1925. Such an

oral agreement must fail as creating a trust, because such agreement was made subsequent to the acquisition of the superior title by the said J. A. Whittenburg."

Many other cases might .be cited and reviewed to sustain our holding, but we think the above cited authorities are clearly decisive of this appeal. They are recent cases, but fortified by many others by our higher courts. Believing that the case has been fully developed and that nothing would be gained by remanding it, we reverse and render same in favor of appellant, and it is so ordered.

Reversed and rendered.