**ESTATE of Anna WITKOWSKI; Leo Witkowski, Independent Executor, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 71–2126
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Dec. 2, 1971.

Rehearing Denied Jan. 17, 1972.

---

* [1] Rule 18, 5 Cir.; See Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d 409.

John D. Aikin, Hereford, Tex., for plaintiff-appellant.

William W. Guild, Tax Div., Dept. of Justice, Dallas, Tex., Eldon B. Mahon, U. S. Atty., Fort Worth, Tex., Fred B. Ugast, Acting Asst. Atty. Gen., Meyer Rothwacks, Gilbert E. Andrews, Michael L. Paup, Loring W. Post, Attys., Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellee.

Before JOHN R. BROWN, Chief Judge, INGRAHAM and RONEY, Circuit Judges.

JOHN R. BROWN, Chief Judge:

Taxpayer, the executor of the estate of Mrs. Anna Witkowski, brought this action seeking refund of Federal estate taxes plus interest in the amount of $22,506.51. Essentially two questions are raised by the appeal: (i) whether the District Court correctly instructed a verdict for the Government on the issue of whether certain real property was subject to the decedent's general power of appointment under § 2041 [1] of the Internal Revenue Code of 1954 and (ii) whether the evidence supports the jury's

---

[1]. Generally this section provides that the gross estate shall include the value of all property with respect to which the decedent possessed at the time of his death an unreleased general power of appointment created after October 21, 1942. The term "general power · of appointment" is defined as:

"* * * a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate; except that—

(C) In the case of a power of appointment created after October 21, 1942, which is exercisable by the decedent only in conjunction with another person—

* * * * *

(ii) If the power is not exercisable by the decedent except in conjunction with a person having a substantial interest in the property, subject to the power, which is adverse to the exercise of the power in favor of the decedent—such power shall not be deemed a general power of appointment. For the purposes of this clause a person who, after the death of the decedent, may be possessed of a power of appointment (with respect to

the property subject to the decedent's power) which he may exercise in his own favor shall be deemed as having an interest in the property and such interest shall be deemed adverse to such exercise of the decedent's power.

(iii) If (after the application of [clause] (ii)) the power is a general power of appointment and is exercisable in favor of such other person—such power shall be deemed a general power of appointment only in respect of a fractional part of the property subject to such power, such part to be determined by dividing the value of such property by the number of such persons (including the decedent) in favor of whom such power is exercisable.

For purposes of clauses (ii) and (iii), a power shall be deemed to be exercisable in favor of a· person if it is exercisable in favor of such person, his estate, his creditors, or the creditors of his estate."

26 U.S.C.A. § 2041(b) (1). See also Estate Tax Regs., § 20.2041–3(c) : Rabkin and Johnson, Federal Income, Gift and Estate Taxation § 52.08B(2) (1971).

finding that the decedent's gift of a portion of that property constituted a transfer in contemplation of death under § 2035 [2] of the Code. We affirm.

 For the most part the facts are undisputed. Mrs. Witkowski died testate on April 20, 1965, survived by two sons (Leo and Vernon) and a daughter (Mrs. Winifred Witkowski Heavin). The property in question consisted of a farm of 684.2 acres located in Deaf Smith County, Texas and constituted community property acquired by the decedent and her husband Frank during their marriage. Frank had died testate in 1957, and by the terms of his will [3] the farm was devised to his wife for the term of her life but with complete authority vested in her to sell, mortgage or encumber the property in any manner she chose, while whatever remained at her death was to pass under the will to the three children in equal shares. Apart from the specific exception to the statutory definition here in dispute, this testamentary language undoubtedly created under Texas law powers of disposition and control amounting to a general power of appointment within the meaning

of § 2041. See Lehman v. United States, 5 Cir., 1971, 448 F.2d 1318; Phinney v. Kay, 5 Cir., 1960, 275 F.2d 776.

However, Taxpayer argues that Mrs. Witkowski's actual authority over the property at the time of her death had been radically altered as a result of a succession of events that began in 1954. In July of that year daughter Winifred and her husband agreed to move to Plainview, Texas and to help Frank and Anna run the farm in return for her parents' promise to will a portion of the property to them. Following Frank's death they reached a similar agreement with Anna, and on February 11, 1959 all three children and their mother executed a written agreement to divide the farm into three shares which were to descend to each of them following Anna's death.

Unfortunately a dispute concerning the operation of the farm arose between mother and daughter sometime in 1963 or early 1964, following which Winifred and her husband filed in the county deed records an instrument characterized as an "affidavit of equitable ownership" under which they claimed an equitable interest and title in the middle one-third

2. "(a) *General rule.*—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, in contemplation of his death.

(b) *Application of General Rule.*—If the decedent within a period of 3 years ending with the date of his death (except in case of a bona fide sale for an adequate and full consideration in money or money's worth) transferred an interest in property, relinquished a power, or exercised or released a general power of appointment, such transfer, relinquishment, exercise, or release shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this section and sections 2038 and 2041 (relating to revocable transfers and powers of appointment); but no such transfer, relinquishment, exercise, or release made before such 3-year period shall be treated as having been made in contemplation of

death." 26 U.S.C.A. § 2035. See also Estate Tax Regs. § 20.2035–1.

3. "It is my will and I hereby give, devise, and bequeath unto my beloved wife, ANNA WITKOWSKI, all of my property, both real, personal and mixed wherever the same may be located, during her life time, she is to have the complete use, occupancy and enjoyment of the same and to receive all rents, revenues, and income therefrom during her life time and she shall have the full and complete right to sell, exchange, invest, re-invest, mortgage, lease and to do any and all things with such property, real, personal, and mixed as she may see fit and proper, her judgment in all such matters being fully binding.

It is my will that any of my said properties remaining in the hands of my beloved wife, ANNA WITKOWSKI, at the time of her death, shall pass to and vest in my three children, to-wit: Vernon Witkowski, my son; Winifred Witkowski Heavin, my daughter; and Leo Witkowski, my son, jointly, share and share alike."

of the farm. While the claim was grounded on the purported 1954 oral agreement, its legal validity was never adjudicated in any Texas court. Predictably, with this familial untranquility, the decedent executed a will on August 12, 1964, leaving all her property to her sons, share and share alike. Five days later she transferred a total of 140 acres of the farm to the sons and their wives as gifts.

On October 26, 1964 the decedent negotiated a compromise agreement with her daughter, by the terms of which Winifred and her husband agreed to accept $21,000 and some farm machinery in return for a release of all claims they were asserting against the farm under the 1959 agreement and the recorded affidavit of equitable ownership. The next day Winifred and her husband executed a quit-claim deed, releasing all their right, title and interest in the property to the decedent and her sons. The settlement agreement was eventually recorded.

The $21,000 paid to settle Winifred's claim was borrowed from the Equitable Life Assurance Society, with the loan being secured by a mortgage on the farm signed by the decedent, her sons and their wives. It is undisputed that the decedent orally promised her sons that if they would help her secure this loan she would leave all of her property to them when she died.

Simply stated, the Taxpayer's argument is that on these facts the decedent under Texas law was estopped from conveying or mortgaging the property without the joinder of her sons and their wives, that the oral promise created in the sons a "substantial adverse interest" within the meaning of § 2041(b) (1) (C) (ii) that effectively precluded her unilateral exercise of what was otherwise a conceded general power under the will, and that at the very least the jury should have been permitted to determine whether the decedent's exercise of her authority was contingent upon the consent of the others.

■ Actually two distinct variants on the same theme are being played here. The first is the contention that Mrs. Witkowski was *legally* barred from conveying the property without the joinder of the sons because under State law they held what was in effect a constructive trust secured by the farm.[4] The second amounts to the theory that practically speaking the decedent could not have exercised her power alone because the sons' alleged equitable claim eliminated any realistic probability of her finding a prospective purchaser or mortgagee who would have accepted her clouded title.[5]

■■ Neither of these positions is tenable. Like the District Court we have serious doubts as to whether the "substantial adverse interest" contemplated by § 2041(b) (1) (C) (ii) can arise other than by the simultaneous creation of such an interest and the power in the same instrument, obviously the paradigmatic case foreseen by Congress when it carved out this exception to the defini-

4. The only Texas case appellant cites in support of this proposition is Faville v. Robinson, 1921, 111 Tex. 48, 227 S.W. 938, where the plaintiff was induced to convey real property to her mother as a result of the mother's oral representation and promise to devise the property to the plaintiff. The Court enforced the promise despite the Statute of Frauds and distinguished its earlier holding in Allen v. Allen, 1912, 101 Tex. 362, 107 S.W. 528 by pointing out that "Allen was already the owner of the land when the oral agreement was made; whereas here [defendant] * * * acquired the title in recognition of the agreement and be-

cause of it." 227 S.W. at 938. As we subsequently hold, the present facts are similarly distinguishable, since Mrs. Witkowski was already the owner of the land and did not secure her interest on the basis of any oral representation.

5. To support this contention Taxpayer introduced the expert testimony of a title attorney to the effect that the property could not have been conveyed or mortgaged without the joinder of the sons. Of course, this testimony is not conclusive on the legal issue of whether under Texas law Leo and Vernon actually held a substantial adverse interest in the farm.

tion.[6] Even assuming, however, that the holder of a general power of appointment may by his own acts estop himself from exercising it, the evidence here clearly establishes that Mrs. Witkowski's authority under Texas law was not restrained by any legally enforceable restriction.

■ In the first place, neither the 1964 oral agreement between Mrs. Witkowski and her sons nor the quit-claim deed from Winifred and her husband created any *present* interest in the property in either Leo or Vernon. Texas courts have frequently recognized and applied the principle that oral agreements to devise or convey real property are not enforceable. "A contract to make a will to dispose of property to certain beneficiaries is a contract to convey and must conform to the Statute of Frauds." Harrell v. Walsh, Tex.Civ.App., 1952, 249 S.W.2d 927, 937; Whittenburg v. Miller, 1942, 139 Tex. 586, 164 S.W.2d 497, 502; Manning v. Sammons, Tex.Civ.App., 1967, 418 S.W.2d 362, 367; Barrow v. Webb, Tex.Civ.App., 1948, 208 S.W.2d 157, 159; Johnson v. Black, Tex.Civ. App., 1946, 197 S.W.2d 523, 528–529; Upson v. Fitzgerald, Tex.Com.App., 1937, 129 Tex. 211, 103 S.W.2d 147, 149; Hauser v. Zook, Tex.Civ.App., 1925, 278 S.W. 518, 519; 61 Tex.Jur.2d, Wills, § 46. Since the purported agreement between the decedent and her sons was never reduced to writing, no legally enforceable interest ever arose, much less the "substantial adverse interest" required to exempt Mrs. Witkowski's authority from the statutory definition of a general power of appointment.

■■ Nor can the appellant prevail on the alternative theory that the practical exercise of Mrs. Witkowski's power was thwarted by the sons' asserted equitable claim and its purported adverse effect on the marketability of her title. If the decedent in fact possessed the authority under the provisions of her husband's will and applicable Texas law to convey or mortgage the property without the joinder of her sons—and it is apparent that she did—the possibility that as a practical matter few if any prospective purchasers or mortgagees would be willing to take a deed or mortgage signed by her alone is totally irrelevant. The decedent's title may have been questionable for any number of reasons, apart from the putative interests of Leo and Vernon, yet such defects could not have exempted from the burden of Federal estate taxation an otherwise incontestable general power of appointment.[7] The power is taxable if it exists, even though other claimants to the property may have hindered its exercise.

In short, the District Court correctly refused to submit the estoppel theory to the jury because the uncontested facts clearly revealed that under Texas law neither son held the necessary substantial interest in the property adverse to the exercise of the power of appointment created by the will.

■ The issue involving the taxability of the 140 acre gift as a transfer in con-

6. The language of § 2041(b) (1) (C) strongly suggests that the definitional exception extends only to adverse interests created concurrently with what would otherwise be a general power, rather than to those arising after its creation, but since there is apparently little authority one way or another on the subject we need not and do not decide the question here.

7. Of course, on these facts the appellant might have made a quite different argument—that is, that the value of the property subject to the decedent's power was something less than what otherwise would have been its fair market value because the substantial possibility of future claims by the sons might have necessitated a lower return from a sale or mortgage had Mrs. Witkowski proceeded on her own. This would go, not to taxability, but to the amount of it. However, the Commissioner's valuation of the property was never contested by Taxpayer, either in his claim for refund or in his pleading in the District Court, and we assume that he chose to stand or fall on his theory that the sons held a substantial interest adverse to the exercise of the decedent's power.

templation of death under § 2035 is a comparatively simple one. The conveyances were made when the decedent was 74 years old and following ten years of treatment for cancer. Her attorney testified that the gifts were motivated at least in part by her desire to reduce estate and inheritance taxes, and she died only eight months later. While there was other evidence suggesting "non-death" motives, the circumstances and the statutory presumption [8] provided the jury with more than sufficient grounds for concluding that the gifts were transfers in contemplation of death and therefore taxable as such. Cf. Commissioner of Internal Revenue v. Duberstein, 1960, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218; Commissioner of Internal Revenue v. Heininger, 1943, 320 U.S. 467, 64 S.Ct. 249, 88 L.Ed. 171.

Affirmed.