(64 Misc. Rep. 199.)

MILLER et al. v. HILL et al.

(Supreme Court, Equity Term, Orleans County.   July, 1909.)

1. TRUSTS (§ 44*)—ACTION TO ESTABLISH—SUFFICIENCY OF EVIDENCE.

In an action to establish a trust, the burden is on plaintiff to make out his case by clear, certain, and convincing proofs.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 66–68; Dec. Dig. § 44.*]

2. WILLS (§ 669*)—SECRET TRUST—AGREEMENT OF LEGATEE INDUCING WILL.

If the testator is induced to make a will by a promise of the legatee, expressed or implied, that he will devote his legacy to a certain lawful purpose, a secret trust is created, and equity will compel such legatee to apply property thus obtained in accordance with his promise.

[Ed. Note.—For other cases, see Wills, Dec. Dig. § 669.*]

3. WILLS (§ 677*)—PROPERTY GIVEN LEGATEE—INTENTION TO ESTABLISH—EVIDENCE.

A testator's intention to establish a trust in property given to a legatee may be shown by satisfactory proof of a declared expectation on his part that the property will be applied to a certain lawful purpose and of the acquiescence of the legatee therein.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1590; Dec. Dig. § 677.*]

4. WILLS (§ 669*)—PROPERTY GIVEN LEGATEE—TESTATOR'S INTENTION AND LEGATEE'S PROMISE AS REQUISITES.

A trust as to a legacy springs from the testator's intention and the legatee's promise, both of which must be established; and even if it is clear that the testator expected the gift to be applied as he wished, if no trust was intended or accepted, the legatee takes an absolute title, and, whatever the moral obligation, no legal obligation rests on him.

[Ed. Note.—For other cases, see Wills, Dec. Dig. § 669.*]

5. EVIDENCE (§ 236*)—ADMISSIONS BY DECEDENTS—CONCLUSIVENESS AND EFFECT.

Courts of justice lend a very unwilling ear to statements of what dead men have said, and evidence of their mere oral admissions is unreliable, where it is sought to bind their successors in interest, not only because they may be fabricated without fear of successful contradiction, but also because they may have been inadvertently made, misunderstood, and imperfectly remembered.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 876–882; Dec. Dig. § 236.*]

6. WILLS (§ 677*)—PROPERTY GIVEN BY TESTATOR TO HIS WIFE—EVIDENCE.

Evidence *held* insufficient to show that testator gave property to his wife in trust.

[Ed. Note.—For other cases, see Wills, Dec. Dig. § 677.*]

7. WILLS (§ 58*)—AGREEMENT TO MAKE WILL—EVIDENCE.

A binding agreement to make a certain will is not to be inferred from the making thereof.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 165; Dec. Dig. § 58.*]

Action by Fred W. Miller and others against Emma L. Hill and others to establish a trust.   Complaint dismissed.

Peck & Whitbeck, for plaintiffs.
Ramsdale & Church, for defendants.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

POUND, J.   Ogden S. Miller died May 18, 1893, and left a will, which was duly probated, whereby he gave the bulk of his estate to his wife, Rosetta G. Miller.   Testator left no children.   A brother and two sisters were his next of kin.   In the following October the widow executed a will wherein she provided that her estate, which came wholly from her husband and which amounted to upwards of $50,-000 in personal property, besides some real estate, should be divided equally between her husband's brother and two sisters and three of her own sisters.   The circumstances under which that will was executed were testified to on the trial by Walter T. Pettengill, who is the husband of one of Mr. Miller's sisters.   He detailed a conversation had with Mrs. Miller at Holley, in Orleans county, on October 11, 1893, in which she said in substance—witness not recalling the exact words:

"Walter, I want to make my will to-day.   At the time Ogden made his will, I promised him that, if I survived him, I would divide the property equally between Fred, Nellie, and Jennie [husband's brother and sisters] and Irene, Augusta, and Emma [three of wife's seven sisters]."

This was followed by some explanation that her husband "had his favorites" in her family.   Pettengill made a memorandum of Mrs. Miller's wishes, and at her request telegraphed to David N. Salisbury, a Rochester lawyer who was well known to Mrs. Miller and to her family, and whose wife is a sister of Mr. Pettengill, to come to Holley to draw the will.   Mr. Salisbury came and saw Mrs. Miller in Pettengill's presence that night.   He also was a witness on the trial.   He could not detail the exact words of the conversation; but, as he recalls it, Mrs. Miller told him that "before Ogden made his last will she had agreed with him to make a will" in substance as above.   Mr. Salisbury drafted a will according to Mrs. Miller's directions, but without making reference therein to any trust, or to any promise or contract or agreement between testatrix and her husband, or taking any written memorandum thereof from testatrix, although Mrs. Miller seems to have been in excellent health and was about to take a pleasure trip to Chicago.   Certainly she was not in extremis, for she lived for nearly 15 years thereafter.   This will Mrs. Miller executed the next day at Mr. Pettengill's office.   One of the witnesses to the will is dead; but George A. Lee, the other witness, testifies that after executing the will Mrs. Miller said, in substance:   "I think I have done as Ogden [her husband] wished."

Mrs. Miller died June 30, 1908, leaving another will, dated June 2, 1908, which was duly probated, by which she bequeathed the bulk of her estate to her blood relatives.   The estate amounted to about $50,-000.   The husband's next of kin bring this action to establish a trust ex maleficio, on the theory that Mrs. Miller was bound in equity to dispose of the estate, which came to her from her husband, pursuant to his wishes and her agreement or promise, as expressed by the will of October, 1893.   The foregoing, with the wills themselves, is all the material evidence offered by the plaintiffs.   It is uncontradicted, and the defendants offer no evidence.

The burden is upon plaintiffs to make out their case by clear, certain, and convincing proofs.   Ripsom v. Hart, 64 App. Div. 593, 72

N. Y. Supp. 791. The rule is that if a testator is induced to make a will by a promise, expressed or implied, on the part of the legatee that he will devote his legacy to a certain lawful purpose, a secret trust is created, and equity will compel such legatee to apply property thus obtained in accordance with his promise. Fayerweather Will Case, reported as Amherst College v. Ritch, 151 N. Y. 282, 323–325, 45 N. E. 876, 37 L. R. A. 305, and cases cited. The intention of the testator so to establish a trust may be shown by satisfactory proof of a declared expectation on his part, prior to making the will, that the property will be so applied, and of the acquiescence of the legatee therein. O'Hara v. Dudley, 95 N. Y. 403, 47 Am. Rep. 53.

The trust springs from the intention of the testator and the promise of the legatee. Both must be established. Even if it is clear that the testator expected that the gift would be applied in accordance with his wishes, if no trust was intended and accepted, the legatee takes an absolute title, and can do what he pleases with the gift. . Whatever moral obligation there may be, no legal obligation rests upon him. Amherst College v. Ritch, supra. Was a trust intended by Mr. Miller? No written memorandum is produced, as in the O'Hara Case and the Fayerweather Will Case, supra, showing that the will was not a complete expression of his testamentary wishes. No witness testifies to any expression of such intention on his part. No reason for establishing such a trust is suggested. No restraint was laid upon his wife's power to dispose of the entire estate during her life as she saw fit.

Did Mrs. Miller induce her husband to leave his property as he did by any promise or agreement on her part to dispose of it according to his wishes, or can it be said from the evidence that the will would not have been made in her favor unless she had made such a promise? A distinction may be drawn between this action to establish a trust ex maleficio for the benefit of the husband's next of kin and actions for the specific performance of a contract for the benefit of a stranger of the character discussed and condemned in Hamlin v. Stevens, 177 N. Y. 39, 69 N. E. 118, and Rosseau v. Rouss, 180 N. Y. 116, 72 N. E. 916. It would not have been against good conscience and natural justice for the testator to make provision for his brother and sisters, his only next of kin; nor can the effort to establish a trust, based on the Salisbury will, executed by the widow shortly after Mr. Miller's death, be stigmatized as an attempted spoliation of her estate, from which the courts should, on principle, protect her beneficiaries, if possible; nor need the court view the plaintiffs' claim with a suspicious eye.

Although it has been well held that "courts of justice lend a very unwilling ear to statements of what dead men have said," and that evidence of mere oral admissions of such persons is unreliable in cases of this kind, not only because such admissions or statements may be fabricated without fear of successful contradiction, but also because they may have been inadvertently made, misunderstood, and imperfectly remembered (Tousey v. Hastings, 194 N. Y. 79, 86 N. E. 831), I doubt not that plaintiffs' witnesses have truthfully given their recollection of what Mrs. Miller said when the Salisbury will was prepared and executed. Persons who were disposed to fabricate evidence would

have gone further than they did, for they could have gone on without fear of contradiction. On the other hand, had Mrs. Miller gone so far as to say in substance or effect that her husband was led by her promises to make his will for her benefit, or that she held his estate as trustee merely, Mr. Pettengill and Mr. Salisbury had, or should have had, sufficient interest in the subject of the conversation and sufficient appreciation of its significance to be expected to note carefully and remember accurately any such declarations, and even to seek to perpetuate such admissions in written form, so that after her death the trust estate would not depend on the "uncertain testimony of slippery memory" in case she should change her mind and alter her will, or so that the evidence thereof would not be wholly lost should she survive the two recipients of her confidence. They do not undertake to give Mrs. Miller's precise words, and the precise words are important. I cannot draw the inference from their narrative that Mr. Miller intended to leave his property to his wife in trust only. Their testimony suggests the wishes of Mr. Miller, and the desire, and even the promise, of Mrs. Miller to carry out such wishes; but it does not suggest fraud on the part of Mrs. Miller in disposing of the property as her own.

The execution of the Salisbury will by Mrs. Miller, although greatly relied upon by the plaintiffs as evidence to corroborate their oral proof, is not consistent with the theory of a trust, and, at most, must be regarded as negligible on the main point. No evidence of the trust is incorporated in the will, nor in any accompanying writing, as might be expected under the circumstances, if such evidence was at hand. Indeed, the circumstances surrounding the execution of the Salisbury will are, to my mind, cogent proof that testatrix, when she executed it, was gratifying a wish rather than discharging an obligation, and was making an ambulatory will, rather than a fixed and irrevocable declaration of trust, and that what she said and did at that time was so understood by Messrs. Pettengill and Salisbury. A form of will to meet the case would readily have suggested itself. Matter of Gloucester (Surr.) 11 N. Y. Supp. 899. A binding agreement to make a certain will is not to be inferred from the making of the will. Edson v. Parsons, 155 N. Y. 555, 50 N. E. 265.

The court cannot make a new will for Mr. Miller, nor enforce moral obligations imposed upon Mrs. Miller, whether by herself or by her husband.

Complaint dismissed. Decision accordingly.