MARK F. UPSON V. MAE F. FITZGERALD ET AL.

No. 6844. Decided March 24, 1937.
(103 S. W., 2d Series, 147.)

*K. K. Woodley, Templeton, Brooks, Napier & Brown,* all of San Antonio, for plaintiff in error.

The Court of Civil Appeals erred in rendering judgment that plaintiff take nothing by his suit, because the effect of said judgment is to deprive him, not only of the performance of the contract alleged, but of his one-thirteenth interest in the land which the trial court held that he had inherited from his mother, and that the same was held in trust for him by his grandparents, and therefore under the finding of the trial court, he was entitled to recover said one-thirteenth interest, regardless of whether the alleged contract with his grandparents to will to him one-half of their estate was within the statute of frauds or not. Shroyer v. Smith, 204 Pa. 310, 54 Atl. 24; Bruce v. Moon, 57 S. C. 60, 35 S. E. 415; Berg v. Moreau, 199 Mo. 416, 97 S. W. 901; Pierson v. Kirkpatrick, 225 S. W. 407.

*Dodson & Ezell* and *Chas. W. Duke,* all of San Antonio, and *G. B. Fenley,* of Uvalde, for defendants in error.

The evidence was insufficient to support a judgment awarding to one lands from the estate of a deceased person on the claim of an alleged oral contract. Bracken v. Hamrick, 25 Texas 407; Sorber v. Masters, 264 Pa. 582, 107 Atl. 892.

MR. JUDGE HICKMAN delivered the opinion of the Commission of Appeals, Section A.

The plaintiff in error, Mark F. Upson, brought this suit against Mrs. Mae Florea Fitzgerald, individually and as independent executrix of the estate of Lewis W. Florea, deceased, and other persons not important here to name, to recover an undivided one-half interest in the estate of Lewis W. Florea. The basis of Upson's asserted right of recovery is an oral con-

tract claimed to have been made by him in 1910, when he was a boy 13 years of age, with his grandparents, Lewis W. Florea and Mrs. E. A. S. Florea. In the trial court Upson was awarded judgment in accordance with his prayer, but that judgment was reversed by the Court of Civil Appeals and judgment rendered that he take nothing. 74 S. W. (2d) 1061.

Several unrelated questions are presented for decision. We shall therefore not make one connected statement of the entire case, but break the statement up into several parts in order to disclose the status of the record with particular reference to each question discussed. Upson alleged, and the trial court found, in substance, that prior to September 12, 1910, when he was a 13-year-old boy, his grandparents, Lewis W. Florea and wife, promised him that if he would go to school and educate himself and take a course of instruction in animal husbandry and allied subjects qualifying him to manage a ranch and would thereafter take care of and manage their ranch property in Uvalde County during their lifetime and until the death of both of them, they would leave to him by will one-half of their entire estate. At that time, and at the time of their deaths, their estate consisted of both real and personal property. Shortly after making this promise L. W. Florea, the grandfather, executed a will, by the terms of which he devised and bequeathed to his wife, Mrs. E. A. S. Florea, all of his property of whatsoever nature. The will provided that should Mrs. Florea die before the testator one-half of the estate should go to testator's daughter, Mrs. Mae Florea Fitzgerald, and the other one-half to Upson upon his arriving at the age of 21 years. The Floreas had two children, Mrs. Upson, mother of plaintiff in error, and Mrs. Fitzgerald. Mrs. Upson died in June, 1910, leaving one child, the plaintiff in error. The will contained provisions for the disposition of the one-half given to Upson in the event he should die before reaching the age of 21 years and leaving no wife or lawful issue, but those provisions need not be specifically noted. Mrs. Florea made her will bearing the same date as that of her husband, in which she devised and bequeathed to her husband all of her property of whatsoever nature and provided for the disposition thereof, in the event he predeceased her, in the identical terms of those in his will. Ten years later, after Upson returned home from college, these wills were delivered to him as evidence of the agreement. Thereafter, new wills were executed by the grandparents. The grandmother's will gave all of her estate to the grandfather. She died in 1929 and he died in 1931. By his will, which in terms revoked all prior wills, he devised to Upson a life estate in a

designated portion of the Uvalde County ranch with remainder to his children, next with remainder to Mrs. Fitzgerald and her children. Both wills were duly probated and Mrs. Fitzgerald is acting as independent executrix under Mr. Florea's will. Upson at first contested the probate of that will, but later withdrew his contest. Mrs. Florea's coverture was not pleaded as a defense, and the provisions of Article 3716, under which Upson could not have testified to transactions with the deceased, unless called by the opposite party, were waived.

The contract relied upon was, in essence and effect, but a contract for the sale of real and personal property. Article 3995, R. S. 1925, provides in part, as follows:

"No action shall be brought in any court in any of the following cases, unless the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith or by some person by him thereunto lawfully authorized:
"  *    *    *

"4. Upon any contract for the sale of real estate or the lease thereof for a longer term than one year; * * *."

1 The first question for decision is whether the will of Lewis W. Florea, executed in 1910, constituted a sufficient memorandum of the contract under the above statute. We are referred to no decision by this Court of the question of whether a will which makes no reference to a contract, but merely makes gifts of an estate in its entirety in the usual form of wills, is a sufficient memorandum under the above statute of frauds. In other jurisdictions there is not complete harmony of decision on the question. The prevailing, and we think the better, rule is stated in 27 C. J., p. 259, in this language:

"A will may be a sufficient memorandum, but not where it does not contain the contract in question, or does not coincide therewith, or where it fails to refer to, or show a connection with, the agreement or bargain in question."

In the case of White v. McKnight, 146 S. C. 59, 143 S. E. 552, 59 A. L. R. 1297, many cases are reviewed and the conclusion is announced that the making of a will pursuant to an agreement to devise land is not a sufficient memorandum of the agreement, where the testator afterwards makes another will revoking the prior one. The Supreme Court of California in the case of Zellner v. Wassman, 184 Calif. 80, 193 Pac. 84, observes:

"  *  *  * A potential factor in furtherance of fraud would be engendered were a will containing a simple bequest permit-

ted to operate as evidence of a binding contract to make such a bequest. It must therefore be held that there is no written memorandum of the agreement here in suit. * * *."

That language was quoted approvingly by the Supreme Court of Arizona in Brought v. Howard, 30 Ariz. 522, 249 Pac. 76, 48 A. L. R. 1347. Among other authorities supporting that view may be listed the following: Watkins v. Watkins, 82 N. J. Eq. 483, 89 Atl. 253; Hale v. Hale, 90 Va. 728, 19 S. E. 739; Allen v. Bromberg, 163 Ala. 620, 50 So. 884; Miller v. Hill, 118 N. Y. Sup. 63; Ortman v. Ortman, 45 O. App. 551, 187 N. E. 588; Sorber v. Masters, 264 Pa. 582, 107 A. 892; Canada v. Ihmsen, 33 Wyo. 439, 240 Pac. 927, 43 A. L. R. 1010.

**2** A will giving property to one can not, without ignoring its very nature and purpose, be construed as a memorandum of a contract to devise it for a consideration. The element of revocability inheres in a will, and to read into it a memorandum of a contract not to revoke it, when no mention of such contract is made therein, is not warranted by any principle with which we are familiar. The consequences of doing so are not difficult to perceive. Nor does the fact that in this case the will was later delivered to Upson affect the rule. If the will itself was not a memorandum of a contract, the delivery thereof would not make it so.

**3** As above noted, a portion of the estate in question, both at the date of the making of the contract and at the date of the death of the testator, was personal property. A contract to transfer such property does not come under the condemnation of the statute of frauds. This leads to a consideration of the question of whether the contract under review is entire or severable. The general rule is that, "If the contract is entire and part is within the statute it is unenforceable as a whole." 25 R. C. L. 704, Sec. 347. On the other hand, if the contract is severable, that is, is susceptible of division and apportionment, having two or more parts not necessarily dependent on each other, the fact that one such part is unenforceable does not prevent a recovery as to the other. Different tests have been suggested by courts of this jurisdiction for determining whether a contract is entire or severable. A discussion of the question with citation of many Texas cases may be found in 10 Tex. Jur., beginning at p. 321, Sec. 185. By any and all of the tests suggested, the contract here under review must be held to be entire. Upson was not to receive the personal property in consideration of performing certain acts and the real property in consideration of performing certain other acts. Under the

contract he was to receive one-half of the estate as a whole in consideration of performing all of certain specified acts. That renders the contract entire and, since part of it is within the statute, it is unenforceable as a whole. 25 R. C. L., pp. 586-7, Sec. 190. Id., p. 704, Sec. 347. From the last citation we quote:

" * * * Thus where before marriage the spouses orally agreed that neither should claim any interest in the estate of the other, it has been held that the agreement being entire and within the statute as to the realty, it can not be enforced as to the personalty. The same is held true as to an oral agreement to give by will both real and personal property in consideration of services to be rendered."

4. The trial court found that it would be a moral and legal fraud to deny Upson the benefits of his oral contract. We are urged to uphold that finding, "break through the statute" and specifically enforce the oral contract, on the ground that to apply the statute would be to suffer it to work a fraud. It is urged that the course of Upson's life was changed by reason of the promise of his grandparents, and that it is impossible to restore him to his former condition. It would perhaps be a sufficient disposition of this question to refer to the well known case of Hooks v. Bridgewater, 111 Texas 122, 229 S. W. 1114, 15 A. L. R. 216. The statute of frauds, as pointed out in that opinion, is a valid statute designed to prevent frauds and to protect estates. Generally, when a court is called upon to enforce a plain, valid statute, it gives no consideration whatever to the question of whether its enforcement appears to work an injustice in the case before it. To determine the wisdom vel non of a statute is not a judicial function. "Equity follows the law," is a familiar maxim. With respect, however, to this particular statute, there has arisen a doctrine, recognized in our jurisdiction, that courts of equity will not enforce same, when to do so plainly works a positive fraud. Where the consideration has been paid but nothing more done it does not work a fraud to refuse to enforce an oral contract for the sale of land, since the value of the consideration may be recovered in an action at law on a quantum meruit. Stevens v. Lee, 70 Texas 280, 8 S. W. 40; Hooks v. Bridgewater, supra. At most, all Upson did was to pay the consideration.

The principal question decided in the case of Hooks v. Bridgewater was whether the performance of the contract there under review by the plaintiff rendered it enforceable in equity, notwithstanding the statute. In that case a father agreed to

resign the custody of his 7-year-old son to an unmarried man, who agreed to bring up the child and educate him as his son and leave to him his entire estate at his death. From that time the child lived with the unmarried man in his home as his son, but upon the death of the unmarried man no will was discovered. The contest was between the child, for whose benefit the contract was made, and who had then grown to maturity, and the heirs at law of the deceased single man. This Court held in a notable opinion by Chief Justice PHILLIPS that such facts did not present a situation where it would work a positive fraud upon the boy to enforce the statute, he having not been put in adverse possession of the land and having not made valuable permanent improvements thereon. Clearly the course of that young man's life was changed by reason of the making and part performance of the oral contract. Let us compare the facts in that case with those in the instant one as related by Upson himself. His mother died in 1910. Prior to that time, and from his earliest recollection, he and his mother lived with his grandparents on a ranch in Uvalde County. After the death of his mother he continued to live with them on the ranch. They entered him in the Whitis school in Austin. Later they spent a year or more in the Republic of Mexico taking him with them and sending him to school there. After returning they sent him back to the Whitis school; later to A. & M. College of Texas, where he remained for a little more than one year. Afterwards he was sent to the Kansas State Agricultural College, where he spent four years, all of this at the expense of his grandparents, amounting to several thousand dollars. He was not graduated from any of the schools which he attended, but returned home in 1920, and his grandparents put him in charge of their ranch. They moved to San Antonio and gave him a rather free hand in operating the ranch property. He kept the income from the ranch in a bank account in his own name and drew upon it freely to pay expenses. He was allowed $60.00 per month as a drawing account. During the lifetime of his grandparents he and they always referred to this allowance as a salary, but he testified in this case that it was more properly designated as a drawing account. In 1923 he was married, whereupon this monthly allowance was increased to $125.00. About the time of his marriage his grandparents deeded him outright a tract of land, which he himself valued at more than $75,000.00. During the time that he was in charge of the ranch he seems to have embarked in some kind of mercantile business and drew from the ranch account carried in his name at the bank a large sum of money to enable him to finance that enter-

prise, later accounting therefor. He was never in adverse possession of the ranch, and made no permanent improvements thereon with his own money. He testified that not one dollar of his private funds is invested in any permanent improvements on the property. By his grandfather's will there was devised to him for life, with remainder to his issue, if any, a large tract of valuable land. These facts evidence that this man's grandparents were his benefactors, not his defrauders. Of course, it might be true that, by going to school and studying animal husbandry and allied subjects, the course of his life was changed from that which it would have been had he not gone to school, or had he not studied those particular branches. It might be said in most every case that the performance of a contract extending over a period of years changes the course of one's life. But that is not sufficient within itself to establish such a fraud as to authorize a court to "break through the statute." It can not be assumed that a boy suffers irreparable injury by being sent to college. Presumably he is benefited thereby. If Upson felt that he had not been adequately compensated for his services, he could have resorted to an action at law. Clearly he has no action in equity for specific performance.

We come now to consider the assignment upon which the application was granted. The trial court found that Upson owned an undivided 1/13th interest in the Uvalde County ranch as an heir of his deceased mother. It is assigned that the Court of Civil Appeals erred in rendering judgment that he take nothing, because the effect of that judgment is to deprive him of that 1/13th interest in the ranch. His petition contained an alternative prayer that, in the event he be denied a recovery on the contract and in the event a certain conveyance made by Florea during his lifetime to his daughter, Mrs. Fitzgerald, be upheld as a consideration for her 1/13th undivided interest in the ranch, then a tract of land of similar value should be set aside to him, or that he recover the value of the 1/13th interest. He recovered on the contract and the conveyance to Mrs. Fitzgerald was not sustained, and so the question of his 1/13th interest was not reached in the trial court. The question which we are called on to decide is whether to remand the cause for a better pleading and more thorough development of the issue with regard to this 1/13th interest.

5 By his petition Upson sought primarily to recover an undivided one-half interest in the entire estate, but he did not clearly elect therein to decline to take under the will. His allegation was that the devise made to him in the will of his grand-

father was a partial and incomplete performance of the contract. In the trial court the executrix sought to have the court require him to make an election, but the court erroneously declined to do so. In view of the above holdings that ruling becomes immaterial in so far as the contract for a one-half interest is concerned, but the same question of election is determinative of the question of whether, upon another trial, he would be entitled to recover an undivided 1/13th interest in the ranch. We infer from the record that, as between the devise in the will and the 1/13th interest, he has elected to stand upon the will. We do not understand that he is claiming the 1/13th interest in lieu of the devise in the will, but that he is claiming that interest in addition to the devise and as alternative to his right to recover a one-half interest under the contract. The will undertook to dispose of his grandfather's entire estate. A definite, specific portion of that estate was given to Upson for life. But for the will he would not have been entitled to that particular estate. That he would have been entitled to another one of probably greater value is immaterial. The 1/13th interest, if it existed, was held in the name of the grandfather, and when he, in his will, did not make any reference thereto or take recognition thereof, but treating the estate as a unit, undertook to devise and bequeath definite segregated portions of it to different individuals, leaving nothing thereof remaining, Upson was thereby put to an election. He can not affirm the will by taking under it, and at the same time deny that the 1/13th interest in the ranch was disposed of thereby. Dunn v. Vinyard, (Com. App.) 251 S. W. 1043; Bumpass v. Johnson, (Com. App.) 285 S. W. 272; Id., 290 S. W. 739; Daken v. Daken, 125 Texas 305, 83 S. W. (2d) 620.

The judgment of the Court of Civil Appeals reversing the judgment of the trial court and rendering judgment for defendants in error is affirmed.

Opinion adopted by the Supreme Court March 24, 1937.