## KARAM v. GARCIA.

No. 5009.

Court of Civil Appeals of Texas.

El Paso.

April 21, 1954.

Rehearing Denied May 12, 1954.

Andress, Lipscomb & Peticolas, El Paso, for appellants.

William C. Collins, El Paso, for appellee.

FRASER, Justice.

This is an appeal from a judgment in favor of Severo V. Garcia, plaintiff, in the sum of $26,887.07, rendered by the lower court against defendant Ted Karam. Parties will hereafter be known as they were designated in the trial court.

As reflected by his pleadings and brief plaintiff described his action as one for damages for breach of contract, which contract was made a part of his petition. This contract provided that plaintiff would buy a certain apartment house from the defendant for the sum of $42,500 and providing

"The above $20,000.00 to be paid in merchandise, groceries and hardware from stock owned by Mr. Garcia at 614 South Stanton Street, at invoice."

In his second amended petition plaintiff alleged that

"Under the terms of said contract defendant bought plaintiff's said business stock, equipment, furnishings and all at a price of $20,000.00, this sum to be credited onto the purchase price of the realty defendant contracted to sell plaintiff."

In his testimony and in his brief plaintiff testified and alleged that the parties had orally agreed that defendant would take plaintiff's stock at $20,000 without an inventory. In his brief plaintiff also states:

"It is the position of plaintiff that there was but one oral modification to the written contract."

The plaintiff further sued for labor, alleging that defendant had hired him and his

son to operate the business and sell the merchandise as agents for defendant, and that defendant had removed $9,904.04 worth of stock from the premises, and for his operating expenses, including rent and utilities. Plaintiff further alleged in his petition that $7,188.80 worth of food had spoiled during the two years that he managed the store as agent for defendant.

Defendant answered admitting the contract as quoted, and alleging that having found it impossible to take inventory he had hired the plaintiff and his son to stack the goods so that the same could be done. Defendant further answered saying that plaintiff had then claimed that the agreement was that defendant would take plaintiff's stock without inventory and give credit for the $20,000 whereupon he, the defendant, refused to proceed further with the sale or trade, and that such action on the part of plaintiff was a material breach of the contract. Defendant admitted that he had taken some goods from the premises, and now and at all times tendered them back to plaintiff.

The jury in answer to special issues found that the parties had made an oral agreement subsequent to the execution of the written contract to the effect that the parties had agreed one with the other that defendant was to buy all the merchandise, equipment and furnishings of plaintiff for the sum of $20,000 without taking an inventory, and that defendant had received the merchandise accordingly. The jury then found that the invoice price of same was $20,000 and that defendant had removed $9,000 worth from the premises and $360 worth had been removed by one Abraham. The jury further found that defendant had hired plaintiff to run the store for him and pay him $13 a day for same, and that the sum of $8,333 was owed for this item. Also that the sum of $3,115.10 was owed for operating expenses. The jury further found that $5,688 worth of food had spoiled after the contract and while plaintiff was managing the business. The court in its judgment partially granted defendant's motion for judgment non obstante veredicto, and rendered its judgment for $26,887.07, which amount represented $20,000 with 6% interest from August 1, 1951, and wages of $8,333, giving defendant credit for $3,252.59, which represented sales made by the plaintiff after he had been employed as manager.

Appellant has presented 40 points of error in his brief, and appellee has answered with 40 counterpoints. The statement of facts consisted of two volumes with a total of 340 pages of testimony.

From the outset it is clear, as revealed by plaintiff's brief and petition, that his entire position rests on an oral modification to a written contract for sale of land, to wit, the apartment house. Without detailing the points and counterpoints by number plaintiff states that this one oral modification is concerned only with the manner of payment, and consideration not always being a necessary recitation in a contract coming within the statute of frauds, that therefore a change in the manner of same would not necessarily be in violation of said statute. Plaintiff claims the alleged contract of hire was an independent and separate contract and therefore there has been no violation or modification sufficient to involve the original contract in any breach of the statute of frauds.

It is immediately clear that the contract of hire, the matter of food spoilage and the item of rental all depend on whether the original oral modification brought the contract under the pains and penalties of the statute of frauds, because if so, then the contract was breached and unenforceable, and of course there could be no contract of hire, and damages for spoilage and rental would not be due. A careful study of the authorities compels us to the conclusion that the oral modification here does not merely change the manner of payment but is in fact a complete change of the terms of the contract, and not being reduced to writing brings the contract as modified within the statute of frauds. This provision is certainly not severable as it is contrary to the terms of the written contract, and attempts to substitute an entirely new consideration. Oral modifications in con-

tracts required to be in writing are generally unenforceable, and if material render entire contract unenforceable. Upson v. Fitzgerald, 129 Tex. 211, 103 S.W.2d 147; Kistler v. Latham, Tex.Com.App., 255 S.W. 983; Robertson v. Melton, 131 Tex. 325, 115 S.W.2d 624, 118 A.L.R. 1505; O'Mara v. Hall, Tex.Civ.App., El Paso, 134 S.W.2d 348, no writ history. It must be admitted that there is a considerable difference between the contract as stated, which provided a payment of $20,000 worth of merchandise at invoice, and the oral modification and answer to the special issue saying that the parties had agreed that defendant would buy the stock of goods for $20,000 without an inventory. The jury's answer to question 1, contradicting the express provision of the contract as it does, places the contract squarely within the statute of frauds by finding as true plaintiff's allegation that parties had agreed to this oral change. The issue and answer are as follows:

"Do you find from a preponderance of the evidence that on or about July 12th, 1951, subsequent to the execution of the written contract dated July 12th, 1951, the plaintiff and the defendant orally agreed one with the other that the defendant was to buy all of the merchandise, equipment and furnishings of the plaintiff for the sum of $20,-000.00 without taking an inventory?

"Answer yes or no.

"We answer yes."

It has been suggested that there is such part performance that if any violation of the statute of frauds had occurred, that the same was offset by the performance, alleging that defendant by carrying away several loads of merchandise had in effect confiscated the stock of goods by such act, and the act of closing up the store for six days, and by statements alleged to be made by defendant. We do not find that these acts and statements are in any wise sufficient to act as an estoppel or performance or in any way to remove the transaction from the effects of the statute of frauds. Obviously if plaintiff kept the store open for almost two years, incurring labor and operating expense of approximately $11,448.00 with a spoilage of $5,688 at the same time, and sold $3,252.29 worth of merchandise and stated that he had bought only in the neighborhood of $2,000 worth, there must have been considerable stock left in the store, and such acts are strongly suggestive of continued proprietorship by plaintiff, and it must be noted that there is no evidence of his having made written demand during this period for his salary and operating expenses. Also, defendant testified that he had offered the stuff back and sold or parted with only a small portion, and never asserted any ownership or control after he discovered that plaintiff was claiming the oral modification. The contract was executed July 12, 1951, and the suit filed in October of the same year. There does not seem to have been sufficient performance to take the matter out of the Statute of Frauds. Upson v. Fitzgerald, 129 Tex. 211, 103 S.W.2d 147; Hooks v. Bridgewater, 111 Tex. 122, 229 S.W. 1114, 15 A.L.R. 216; Morris v. Gaines, 82 Tex. 255, 17 S.W. 538; Texas Company v. Burkett, 117 Tex. 16, 296 S.W. 273, 54 A.L.R. 1397. We also find that those issues pertaining to the value of the goods removed by defendant did not properly define the measure of damages, as the same should have been the market value rather than the invoice price.

For the above reasons the judgment of the trial court is reversed and rendered insofar as it applies to plaintiff's recovery on a contractual basis. That part of the judgment dealing with the damages alleged to be due plaintiff by virtue of defendant having removed certain of plaintiff's merchandise is reversed and remanded.