**WEST TEXAS DISTRICT BAPTIST ASSOCIATION, Appellant,**

v.

**PILGRIM REST BAPTIST CHURCH, Appellee.**

No. 16430.

Court of Civil Appeals of Texas.

Fort Worth.

May 31, 1963.

Rehearing Denied June 28, 1963.

W. J. Durham and E. Brice Cunningham, Dallas, for appellant.

Donald C. Bubar and Melvin F. Adler, Fort Worth, for appellee.

MASSEY, Chief Justice.

Judgment in the trial court, purportedly in favor of a group of defendants upon a cross-action, was one by which title and possession to certain realty in Tarrant County, Texas were awarded to said defendants conditioned upon their payment—within thirty days after judgment became final—a certain sum found to be owing by the defendants to the original plaintiff.

Judgment is reversed and the cause remanded for another trial.

West Texas District Baptist Association, a religious corporation, brought suit as plaintiff against Pilgrim Rest Baptist Church, an unincorporated religious association, and against P. J. Hillary and others, its trustees. For convenience the plaintiff will hereinafter be referred to as the Association, and Pilgrim Rest Baptist Church as the Church. When occasion necessitates reference to action taken by agents or trustees of either the Association or the Church, it will in most instances be referred to as though it was action by one of the two principals.

In 1949 the realty in question, two lots within a subdivision, belonged to Mrs. Brown and others. Pursuant to arrangement between the Association and the Church, the former entered into a sales and purchase contract with Mrs. Brown et al., whereby possession was delivered over to the Church upon the Association's entry into the contract of purchase with the owners. Consideration was agreed to be

the sum of $2,500.00, which the Association obligated itself to pay upon the following terms: $100.00 down in cash, to be followed by payments of $60.00 in the first day of April, September and December in each year until the full amount of the purchase price was paid, interest at 8% per annum on the unpaid balance to become a part of each payment, with the Association obligating itself for the payment of taxes and assessments, if any. Promptly thereafter the Church, in possession, erected improvements on the premises.

In the pleadings of the Association, when it instituted suit against the Church, no reference is made to the aforementioned transaction of 1949 other than that it purchased the title under the sales contract, nor of any other circumstance prior to April 30, 1955, when it received a warranty deed to the property from its former owners. The Church, on the other hand, said a great deal about this. It alleged that the entry of the Association into the contract of purchase and sale in 1949 was performed pursuant to the following: That the Association, through its trustees and officers, approached the Church and its members and officers with the proposition that it would contract to buy a site selected by the latter; would pay the contract price; would ultimately take the deed to the property in both the name of the Association and the Church; and that when the Church repaid or reimbursed the Association the funds advanced it would convey over to the Church full legal title. Further: That in reliance thereupon and induced thereby the Church spent over $330.00 in cash and its members invested labor in the erection of a building on the premises; established a building fund with the objective of erecting a much better building and by April 30, 1955 said fund amounted to $1,100.97; that it undertook to arrange for the financing of the better building through the investment of the $1,100.97 to secure the erection of a building which would require more than that amount, whereupon it discovered that financing made it requisite that the former owners,

Brown et al., have title divested out of them; and that in order to accomplish the objective further negotiations and agreements were entered into with the Association as the result of which title was divested out of the former owners by paying off the balance owing.

Adverting to the pleadings of the Association, it is noted that it says that it acquired full title under warranty deed of April 30, 1955; that thereafter, on or about May 12, 1955, it entered into a verbal agreement with the Church substantially to the effect that it would permit the members and officers of the Church to use and occupy the land for church purposes, and to place improvements thereon, conditioned upon the Church keeping up payments on notes made for erection of the improvements, and further conditioned upon the Church maintaining membership in the Association, complying with its rules and regulations, and making periodic contributions to the Association as required by its rules. However, if the Church breached its agreement in any respect the rights or privileges granted to the Church could be terminated by the Association.

Continuing, the Association alleged a breach on the part of the Church, its election to terminate the rights or privileges granted to the Church, notice thereof given and demand made for possession of the property, the Church's refusal to yield possession, and the necessity for and resulting suit. The Association prayed for judgment declaring that the verbal contract (of May 12, 1955) was terminated, judgment removing clouds from its title to the property and quieting title; judgment for its possession and declaration that the Church had no right of possession, title, interest, claim or equity in and to the title, and for divestment. Additional relief was also prayed for but it is not material to our discussion.

We advert once again to the pleadings of the Church, as related to the transaction resulting in the Association receiving the

warranty deed to the property on April 30, 1955.

To be inferred from the allegations was that the Association repeated and confirmed the promises the Church alleged the Association made in 1949, as result of which the contract of purchase and sale was made. It was affirmatively alleged that the Church "advanced" $1,100.00 from its building fund to be used by the Association in paying the balance of the consideration due to be paid on the contract with the former owners in order to cause them to divest themselves of title by delivery of a deed to the property; and that the Association took the title in its own name (the Church not having been named as a grantee). Matters were alleged relative to the negotiation of contract with the builder who erected a new church building on the premises; the mechanics of the placing of a mechanics' lien on the property; the execution of deeds of trust in which the Association joined; matters involved pursuant to the bankruptcy of the builder who erected the church building and the "working out" of the complications of the situation whereby the lien on the premises ultimately belonged to an investment company, and the retirement of the indebtedness and release of lien; and matters reflecting the confusion in any accounting concerning the question of what the Church had paid on the indebtedness and original investment of the Association, and what the Association had paid thereon. It was also alleged that improvements in addition to those of the contractor who had built the new church building had been placed thereon by the Church.

We consider the prayer in the pleadings of the Church to be of great importance. The Church sought, in the event it might be determined upon the trial that the Association held full title and that the Church should be dispossessed, an order which would permit it to remove the improvements it had placed on the lots. Primarily, however, it sought an accounting so that the trial court could determine the exact amount it should pay to the Association to reimburse it the funds invested by it in the property, and requested that the court fix a time within which the Church might cause the payment thereof to the Association "as consideration for a deed to the property".

In our view it was neither expressly nor impliedly a part of the Church's prayer for relief that a constructive trust be impressed upon the property in question, that the deed showing legal title in the Association was in fact or effect a mortgage securing an indebtedness of the Church and entitling it to delivery of the title, nor that it be awarded title to the property or that a title claimed by it be quieted.

Under the theory of the case as presented by the pleadings of the Association, it held not only full legal title, but the equitable title to the property, and that it was entitled to have possession thereof upon a finding that the agreement under which the Church held the same was as the Association alleged, coupled with a finding that the Church had breached its agreement thereunder. In this connection we take occasion at this stage of the opinion to say that we believe a fact issue was raised under the evidence upon the matter of what the agreement consisted, although there would be no doubt that there had been a breach thereof by the Church in the event the agreement was as alleged by the Association, and that fact would be resolved as a matter of law. We also take occasion at this stage of the opinion to remark upon the fact that the case made by the Association, under its pleadings, was not submitted to the jury, although no complaint because of this was made and preserved and presented as a point of error on appeal. Had the Church's pleadings done no more than join issue with the Association on the case it alleged, we believe that issues of fact would exist, the resolving of which would control the entry of judgment.

Under the theory of the case as presented by the affirmative pleadings of the

Church, it is apparent that relief is sought which would have a certain analogy to a case where the defendant pleads in confession and avoidance. In this we refer to the relief for which the Church prayed in the event the judgment was for the Association in quieting its title and awarding possession, to-wit: the right to remove the improvements placed thereon and a time designated within which to effect the removal. The extent of other relief sought is not made clear. The Church did seek an accounting under the theory that its representations as to the gist of the two agreements with the Association were correct as a matter of law (although we believe a question of fact was raised), and assumed that the Association would readily deliver a "deed" to the property upon a tender thereof made in behalf of the Church.

The special issues submitted to the jury were in two groups. One group related to the transaction in 1949, the other to the transaction in 1955. On the first group the jury made findings to the effect that the initial agreement of the parties included that of the Association that when the Church repaid to it its investment made in connection with the contract of purchase and sale it would convey the lots to the Church; that said agreement on the part of the Association was made to induce the Church to use the premises for church purposes and to make improvements thereon, which were material inducements upon which the Church relied and was induced to install the improvements. On the second group the jury made findings to the effect that prior and incident to the Church's agreement and delivery of the $1,100.00 plus agreement to make payment on the indebtedness resulting from the erection of the larger church building on the premises, the Association represented that it would later convey the property to the Church upon its payment of the balance owing to retire the debt claim of third parties and reimbursement of the balance of the Association's investment in the property; that said agreement on the part of the Associa-

tion was made to induce the Church to enter into the agreement and was a material inducement upon which it relied.

The judgment, purportedly upon the verdict, declared that the Church was entitled to have a decree vesting title to the property as against the Association, provided that if within thirty days after judgment became final (by which it was pointed out that the court meant the mandate of the appellate court in the event of affirmance on appeal) the Church should pay the Association or cause it to be paid the sum of $2,877.50;—but that if the Church failed to make said payment then the Association was entitled to judgment for title and possession of the property. The judgment does not describe the property, and we believe this was error, although not necessarily fatal.

It seems to us that the only theory under which the judgment was rendered was that it was one by which a cloud was removed from the Church's title. If so, it was reversible error to enter the same in behalf of the Church because it did not pray for such affirmative relief. White v. Cooksey, 1923 (Tex.Civ.App., Beaumont), 253 S.W. 548, writ dism.; 34 Tex.Jur. p. 837, "Quieting Title", § 24, "Relief Generally". For that reason the judgment cannot be affirmed and must be reversed. Additionally, no jury finding supports the judgment entered, aside from any question of pleading.

It seems to us that it would be proper to say that from the whole record the affirmative case of the Church was tried upon an erroneous theory and was not fully developed. The Association would have no right to judgment in the case, even should we disregard the somewhat questionable right of the Church to assert a cause of action under its pleadings, because of the absence of findings of fact upon which such a judgment would depend.

In view of the necessity of retrial we deem it in order to direct counsel to authorities in addition to those they discuss

in the briefs as follows: On the matter of the Statute of Frauds: Hooks v. Bridgewater, 1921, 111 Tex. 122, 229 S.W. 1114, 15 A.L.R. 216; Upson v. Fitzgerald, 1937, 129 Tex. 211, 103 S.W.2d 147; 26 Tex.Jur. 2d p. 154, "Frauds, Statute of", § 4, "Effect of statute on trusts" (20A Tex.Jur. p. 270, § 5). On the matter of constructive trusts: Restatement of the Law, Restitution, Part II, § 160 et seq. under "Constructive Trusts and Analogous Equitable Remedies"; 39 Tex.Jur.2d p. 25, "Mortgages and Trust Deeds", § 13, "(Deed Absolute as Mortgage)—In General", et seq. (29 Tex.Jur. p. 799, § 11, et seq.); 42 Tex.Jur. p. 649, "Trusts", § 45, "(Constructive Trusts)— Nature and Characteristics", et seq.; Gaines v. Hamman, 1962, Tex., 358 S.W.2d 557, and the discussions and authorities in both the majority and dissenting opinions.

Judgment is reversed and the cause remanded for another trial.