Gertrude O. Sammons MANNING et vir, Appellants,

v.

Ed E. SAMMONS, Individually and as Independent Executor of Estate of Mrs. Lee James, Appellee.

No. 16842.

Court of Civil Appeals of Texas.

Fort Worth.

June 23, 1967.

Rehearing Denied Sept. 15, 1967.

Sidney P. Chandler, Corpus Christi, for appellants.

Luna & Vaughan, Dallas, Brown, Herman, Scott, Young & Dean and Beale Dean, Fort Worth, for appellee.

OPINION

MASSEY, Chief Justice.

Suit in the trial court was by Gertrude O. Sammons Manning and her husband for declaratory judgment. The defendant was Ed E. Sammons, both individually and as Independent Executor of the Estate of Mrs. Lee James. Mrs. James died November 16, 1960. The plaintiffs sought a determination that Mrs. Manning owned a one-quarter undivided interest in the estate of the deceased. Said estate consisted of both realty and personalty.

The defendant sought and obtained a summary judgment upon one or both of two theories; that under the undisputed facts it was conclusive that plaintiff had no interest in the estate of the deceased, and/or that such claim as plaintiff asserted stood released, compromised and settled, or the subject of an accord and satisfaction.

We affirm.

For purposes of determining the propriety of the summary judgment in favor of the defendant we view the evidence before the court as hereinafter narrated.

On or about October 25, 1960 Mrs. James invited interested parties, including plaintiff and defendant, to visit with her and consult concerning her last will and testament. She then had an existent will. As prepared, said will provided that upon her death, that defendant herein, Ed Sammons, be appointed independent executor, and that after payment of all just debts that "All the rest, residue and remainder of my estate, of any and every kind and nature whatsoever, and wheresoever situated, whether real, personal or mixed, I will devise and bequeath to my Nephew Ed Sammons in fee simple and absolute."

At the meeting held about October 25, 1960, Mrs. James orally expressed her will and desire that her estate be divided into four equal parts. She stated that it was her intention to make another will by which provision therefor would be made. One-fourth she intended to leave to Ed Sammons, defendant, and another one-fourth she intended to leave Gertrude O. Sammons Manning, plaintiff. As to Mrs. Manning's prospective portion Mrs. James desired to provide that the income therefrom be used for the support of Mrs. Manning's mother and father during their lifetimes. Mrs. Manning and her husband prepared a written statement in which they promised to so use the income from the one-fourth of the estate expected, with additional commitment that they would provide for such by their wills as protection for Mrs. Manning's parents. The instrument was prepared, signed and dated October 28, 1960, and mailed to Mrs. James.

Subsequent to the conference, held about October 25, 1960, the attorney for Mrs. James prepared a rough-draft of four legal-sized pages for incorporation into the body of the contemplated new will. Such draft was not in the form of a will. It was presented to and approved by Mrs. James. The paragraph which appeared therein relative to the undivided one-fourth interest for Mrs. Manning directed that she receive her interest as trustee for her father and mother, with right to invade the principal if the income was insufficient for the support and maintenance of the father and mother. The paragraph ended with the words: "At the end of the trust term the balance of the property then in the hands of the Trustee shall pass to and vest in the said Gertrude Ophelia Manning, free from the trust provisions hereof if she be living at such time. If she be not so living then such property shall pass to and vest in her child or children surviving and then living * * *." On the last of the four pages Mrs. James wrote "Mrs. Lee James, Sunday Nove 6th, 1960".

Mrs. James died before the intended will was executed. Hence the only existent testamentary instrument was that which made the defendant independent executor and left all her property to him.

A family meeting was held a short time after Mrs. James' funeral. At that meeting those who would have benefitted had Mrs. James executed the newly contemplated will, including plaintiff Mrs. Manning, received assurances from the defendant that he desired a distribution of the estate be accomplished so as to conform to the desires previously expressed by Mrs. James. This pleased the plaintiff and apparently all the others interested. It was orally agreed by all that the defendants would have the existent will probated, and that he would administer the estate as Independent Executor. Defendant agreed that each would eventually receive from his hands the interest the deceased had intended and for which the new will would have provided.

The existent will was probated, and the judgments and orders of the Probate Court pursuant thereto became final. During this period and thereafter, there was litigation by the relatives of Mrs. James' deceased husband who were attempting to establish an interest in the estate. That litigation was finally concluded. As a result, however, there was delay in the anticipated distribution of the various undivided one-fourth interests, including that expected by the plaintiff. About the time such afore-

mentioned litigation was concluded, the defendant began to contend that he was not bound to distribute to the plaintiff the undivided one-fourth interest in the estate which she had anticipated would ultimately be received. His contention, conveyed to plaintiff, essentially denied that there was any promise on his part to distribute one-fourth to her, but that in any event there was no legal basis under which he was compelled to make such distribution.

Obviously, it was somewhat of a shock to the plaintiff to receive the news of defendant's attitude. The frequent communications she had received from the defendant for more than two years bore tenor and import, either expressly or impliedly, which indicated that she would ultimately receive the expected undivided one-fourth once the aforementioned litigation came to an end. There had also been representation made concerning initiation of action by defendant in the drawing up of a trust instrument under provisions of which plaintiff's obligation would be stated relative to use of income from her portion—for her parents, "Uncle Herman" and "Hattie Sale".

█ We find nothing in the circumstances, however, which would operate to the benefit of the plaintiff under any principle of estoppel. It was not pleaded. See the chapter on "Estoppel" in 22 Tex.Jur.2d p. 659, et seq.

Following is the letter which brought defendant's new position to the attention of the plaintiff:

"ED E. SAMMONS
"1029 Elm Street
"Dallas, Texas

"May 5, 1964

"Mrs. J. R. Manning

"519 West Lee Street

"Kingsville, Texas

"Dear Gertrude:

"After many months of various problems, delaying the handling of Aunt Lee's Estate, I am finally in a position to advise you of the final decision and disposition of the Estate that has been reached by the Estate's attorneys, accountants and myself. It is my desire to carry out the wishes of Aunt Lee as expressed to me and to Mr. A. H. McCulloch, Attorney for the Estate.

"There were many unforeseen complications that were created by the suit against the Estate, by the family of Uncle Tom, which suit took considerable time and money to dispose of. After the settlement of this suit, we then paid the Internal Revenue the Federal Estate Taxes. Upon submission to the State of Texas the State Inheritance Tax, the State Comptroller disallowed and refused to recognize any other beneficiary other than myself. This decision was contested by our attorneys, and we received the second refusal which then increased the State of Texas' Inheritance Tax by a considerable amount.

"Upon applying to the Internal Revenue Department for further ruling regarding the distribution of this Estate through our accountants, we have been further advised that any properties given by me to anyone else would be treated as a gift and would, therefore, involve considerable Gift Tax.

"It is now very apparent due to the above reasons set forth, that the handling of the property under any trust arrangement would and could not meet the wishes of Aunt Lee for the use and enjoyment of her Estate by those of us whom she wished to be remembered in a manner she has expressed to me on many occasions.

"Enclosed you will find a statement of assets expressed in cash values for possible distribution of the Estate as of November 16, 1960. You will note that the total Estate amounted to $168,855.56, after deducting specific legacies in the amount of $21,769.75; this left the total of $147,085.81 before additional Estate expenses. This, of course, divided equally would be $36,771.45. After applying specific legacies and other charges as set forth in the enclosed statement, there is a balance to be distributed, in the amount of $78,775.74.

"Upon the advise of the Estate's accountants and attorneys, I have been advised that Bonnie and I together, jointly, could give up to $6,000 per year to an individual without incurring further Gift Tax liability. After taking all of these factors into consideration, it is my decision and intention to divide equally the portion that would go to Uncle Herman, Aunt Lee's brother; and you, as Herman's daughter; and your mother, Uncle Herman's first wife, the amount of $19,718.78, as shown by the enclosed statement. Fifty per cent of this amount, being $9,859.39, will be given by Bonnie and me, jointly, to you and your mother. The other fifty per cent, in the same amount, will be given to Uncle Herman.

"Upon receipt of the enclosed copy of this letter, with the signed acknowledgement at the bottom, a check payable to you and your mother, jointly, in the amount of $9,859.39, will be forwarded to you.

"Love,

"/s/ Bonnie B. Sammons

"/s/ Ed E. Sammons

"Ed and Bonnie

"EES :gw

"Enc.

"Upon receiving the payment of $9,859.39, evidenced by check, in such amount payable to your joint order, such being the gift being made by me and my said wife, Bonnie Sammons, to you and your mother, Hattie Sale, that you acknowledge that you have no claim of any character against me, individually or as independent executor of the estate of Mrs. Lee James, deceased, nor in the property which belonged to the said Mrs. Lee James, or to her estate.

"Accepted by:

"_____

"Ophelia Gertrude Manning

"_____

"Mrs. Hattie Sale"

A similar letter went to "Uncle Herman", father of the plaintiff. He accepted the $9,859.39 offered to him. About two months later plaintiff and Mrs. Sale, her mother, executed and returned the instrument appended to defendant's letter of May 5, 1964 and defendant paid them $9,-859.39. However, in her pleadings, plaintiff alleged: "Plaintiff, Gertrude O. Sammons Manning, says that the sum of money she received as a 'gift' from Ed E. Sammons and wife Binnie Sammons on about June 6, 1964, was in fact less than one-fourth of the cash on hand, stocks, bonds, jewelry, furniture, income from the estate, etc. of the Estate of Mrs. Lee James, deceased, and was actually due her out of the estate as her interest in said items and nothing more than her interest in such items. Although she has been at all times entitled to such sum as her interest in the above named items of the said Estate of Mrs. Lee James, deceased, she has kept such sum of money in tact on deposit in KINGSVILLE FIRST SAVINGS & LOAN ASSN at Kingsville, Texas. As of June 30, 1966, the amount of the sum with interest is $11,063.92 if necessary will be and is tendered into the court for disposal by the court as equity and justice may require." As heretofore stated, the plaintiff's prayer is for a declaratory judgment and not to have set aside that which defendant relies upon as a release and as accord and satisfaction.

We have already mentioned the fact that before the death of Mrs. James, the plaintiff and her husband prepared a statement in which they promised to use the income from one-fourth of the James estate as desired by her, and to make their wills to so provide in the event they predeceased their parents, "Uncle Herman" and Hattie Sale. It is plaintiff's contention that Mrs. James' receipt and retention thereof constituted an oral acceptance of a written contract, hence binding upon her. However, there is no written instrument which constitutes, refers to, or mentions a contract of any sort, nor can a contract be created by construction. The alleged contract would be unenforceable under the

State of Frauds (which was plead) in any event for lack of a written memorandum, since real property is involved. Upson v. Fitzgerald, 129 Tex. 211, 103 S.W.2d 147 (1937); Arnold v. Starke, 292 S.W.2d 887 (Texarkana Civ.App.1956, error refused).

Concerning the alleged agreement of all the persons interested in the estate of the deceased, at the family meeting held right after Mrs. James' funeral, it is to be remembered that testatrix' existent will was not one under which anyone other than the defendant would receive anything—provided he was living at time of the testatrix' death. In view thereof nothing agreed upon by or with any other, specifically one such as the plaintiff herein, would be binding and enforceable. It would only be between "beneficiaries" that agreement for a distribution of the estate of a decedent in a manner other than the provision therefor made by will would become enforceable, no others having an interest which would be a proper subject to a compromise and settlement of the respective claims. 61 Tex.Jur.2d p. 345, "Wills", Sec. 219, "(Compromise and Settlement Agreements)—In general"; see also the discussion in Robbins v. Simmons' Estate, 252 S.W.2d 970 (Galveston Civ.App., 1952, writ ref. n. r. e.).

In any event, however, plaintiff stood idly by—trusting defendant—when the order and decree in probate of the testatrix' estate became final. Necessarily, therefore, her claim would be a collateral attack upon the judgment rendered by the County Court, one which may not be entertained in the current proceeding.

Plaintiff's constructive trust theory necessarily must fail because the very right she asserts is one which arose because of the defendant's manifestation of an intention to create it. As an express trust the asserted right of the plaintiff must fail because her claim involves a right to real property and there was no written memorandum, a necessity to the effectual creation of an express trust thereon. Vernon's Ann.Tex.Civ.St. Tit. 125A, "Texas Trust Act", Art. 7425b–7, "Requisites of a trust".

Finally, we have arrived at the conclusion that plaintiff's claim must fail because the evidence before the court conclusively established that her claim stood released, compromised and settled when she accepted the $9,859.39, which was the subject of discussion in defendant's letter to her on May 5, 1964.

Necessarily, plaintiff contends that she was entitled to an undivided one-fourth of the Estate of Mrs. James, deceased, and that the amount paid to her was out of said estate and was less than such undivided one-fourth. Furthermore, that the $9,859.39 was a part of said portion due and owing and as such she had the right to receive the same and apply it upon the entire amount to which she was entitled without creating any impediment to her claim of the balance owing. In other words, she treats the situation as though there was a liquidated sum indisputably due and owing, with a part only tendered and received. Hence, according to plaintiff, its receipt would be in extinguishment merely of such part. If she was correct it would not be proper to consider the $9,-859.39 as consideration sufficient to support release of that entire claim.

Indisputably established in the record before the court, however, was the fact not only that there was a dispute between the parties over whether plaintiff was legally entitled to anything, but furthermore, if so entitled, whether she was entitled to as much as a liquidated amount, as the $9,-859.39. A matter of dispute involved the matter of specific bequests desired to be incorporated in the testatrix' contemplated will which we ignored in the statement of facts previously made. Concerning such the defendant asserted that Mrs. James desired their distribution and that he had accordingly made distribution according to her wishes. Plaintiff contends that there

should have been no such distribution and that to do so was no part of Mrs. James' desires. Indeed, plaintiff was contending during such period that as a part of her entitlement she should receive an interest in real estate, the value of which in money, was never agreed. Money, in the place and stead of real or other property, could only be considered as part of a liquidated amount or part of a liquidated claim if there was an antecedent agreement of the parties thereupon, for it would be something other than or different from that which the claimant considered himself entitled. A release under such circumstances is the proper subject of an accord and satisfaction. 1 Tex.Jur.2d, p. 207, "Accord and Satisfaction", Sec. 1, "Definitions".

Judgment is affirmed.